# UNITED STATES DISTRICT COURT
## Western District of Michigan

Miguel Angel Burgos Lopez
A220-751-504
North Lake Processing Center
1805 West 32nd Street, Baldwin, Michigan 49304

_____
                Petitioner

             v.                        Case No._____

**United States Attorney's Office**
Western District of Michigan
330 Ionia Avenue NW
Grand Rapids, MI 49503


Warden (or Superintendent)
(Petitioner's Immediate Custodian)
North Lake Processing Center
1805 West 32nd Street, Baldwin, Michigan 49304


Director, Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
Detroit Field Office
985 Michigan Avenue, Suite 207
Detroit, MI 48226


Todd M. Lyons
Senior Official Performing the Duties of the Director
U.S. Immigration and Customs Enforcement
500 12th Street, S.W.
Washington, DC 20536


Kristi Noem
Secretary, **U.S. Department of Homeland Security**
2707 Martin Luther King Jr. Avenue, S.E.
Washington, DC 20528

Page 1 of 8

Pamela Bondi
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

_____

Respondents


Byron Nolen (P55118)
Attorney for Petitioner
The Nolen Law Firm
358 Sunningdale Drive
Inkster, MI 48141
(734) 620-9685
bnolen@comcast.net
USCIS Account #HH296275

_____


# PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

Petitioner **Miguel Angel Burgos Lopez (A# 220-751-504)** is unlawfully detained by **U.S. Immigration and Customs Enforcement ("ICE")** at the **North Lake Processing Center, 1805 West 32nd Street, Baldwin, Michigan 49304**, without statutory authority and in violation of the **Due Process Clause of the Fifth Amendment. Petitioner has never used any other name or alias.** As a direct result of this unlawful detention, Petitioner's U.S.-born triplets are suffering severe and ongoing hardship. Petitioner's spouse, **Jesica Marcela Ferrucho Romero**, has been unable to work because she must provide full-time care for their three medically vulnerable toddlers. Since the triplets were born, Petitioner has been the sole financial provider for the household. Although Petitioner's spouse has attempted to secure daycare in order to work, the cost of care for three infants exceeds any income she could realistically earn. The family does not receive **Section 8** housing assistance or **SNAP** benefits. One child, **Antonella Burgos Lopez**, has experienced feeding refusal and has been diagnosed with low iron following Petitioner's detention, underscoring the severe humanitarian impact of continued detention on this family.

Petitioner respectfully requests that this Court order:
(1) Petitioner's immediate release from ICE custody; **or**
(2) in the alternative, a constitutionally compliant bond hearing within seven (7) days, at which the Government bears the burden to justify continued detention.

Page 2 of 8

This Petition challenges **only** the lawfulness and constitutionality of Petitioner's **civil immigration detention**. Petitioner does **not** seek review of the merits of any removal determination, asylum claim, or application for immigration benefits. **No final order of removal has been entered** in this case.

Petitioner is presently in removal proceedings and has a **preliminary asylum hearing scheduled for January 20, 2026**, at which his defensive asylum application will proceed. Although Petitioner may be permitted to appear by remote video, continued detention **substantially interferes with Petitioner's ability to meaningfully consult with counsel and prepare his case**. Petitioner has been represented by undersigned counsel **only since January 9, 2026**, and detention has significantly restricted attorney–client communication, document review, and case preparation during this critical pre-hearing period.

In addition, Petitioner is a **derivative beneficiary of a U-visa petition currently pending before U.S. Citizenship and Immigration Services**. Petitioner references this pending status **solely to describe his lawful immigration posture and custody equities**, and **not** to request review of any decision committed to USCIS discretion.

## I. JURISDICTION AND VENUE

This Court has jurisdiction under **28 U.S.C. § 2241** because Petitioner is in **federal custody** and contends that his continued detention violates the **Constitution and laws of the United States**, including the **Due Process Clause of the Fifth Amendment**.

Petitioner is physically detained within the **Western District of Michigan** at the **North Lake Processing Center**, located in **Baldwin, Michigan**. Venue is therefore proper in this Court because the **immediate custodian** responsible for Petitioner's detention is located within this judicial district.

Habeas relief is appropriate where the federal government detains a noncitizen **without statutory authority** or **in violation of constitutional limitations**, including due process. See *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2003).

ICE is a component agency of the U.S. Department of Homeland Security. Accordingly, Petitioner is detained under the authority of the federal government.

## II. PARTIES

The **Petitioner and all Respondents** are **identified in the caption** of this Petition. The **Warden (or Superintendent) of the North Lake Processing Center** is Petitioner's **immediate custodian** for purposes of this action under **28 U.S.C. § 2241**, and the remaining Respondents are named **solely in their official capacities** as federal officials responsible for Petitioner's detention.

## III. CUSTODY

Petitioner has been in the custody of **U.S. Immigration and Customs Enforcement ("ICE")** since **November 18, 2025**, and is presently detained at the **North Lake Processing Center** in Baldwin, Michigan. Petitioner therefore satisfies the **"in custody" requirement** for habeas corpus relief under **28 U.S.C. § 2241**.

**Petitioner is a civil immigration detainee in ongoing removal proceedings.** He is **not** detained pursuant to any **criminal judgment, sentence, or pending criminal charge**, but solely under the civil immigration detention authority of the federal government.

## IV. FACTUAL BACKGROUND

### A. Detention and Misclassification

On or about **November 18, 2025**, Petitioner was detained following a **checkpoint stop in Lincoln Park, Michigan**. He was initially transported to the **ICE Detroit Field Office located at 985 Michigan Avenue, Detroit, Michigan**, and subsequently transferred to the **North Lake Processing Center** in **Baldwin, Michigan**, where he remains detained.

Petitioner has **no criminal history** and has **never been arrested, charged, or convicted** of any criminal offense.

Despite the absence of any qualifying criminal conviction or conduct that would trigger mandatory detention, **ICE has treated Petitioner as subject to mandatory detention under Immigration and Nationality Act ("INA") § 236(c).** ICE has provided **no written explanation** supporting this classification and has issued **no written determination** explaining the denial or withholding of bond.

### B. Immigration Proceedings and Relief Pending

Petitioner is presently in **removal proceedings** and has a **defensive asylum application (Form I-589) pending** before the Immigration Court. **No final decision has been issued**, and **no order of removal has been entered** in this case.

Petitioner is also a **derivative beneficiary of his spouse's pending U-visa petition**.

Petitioner has **no prior removal orders, voluntary departure orders, or other adverse immigration history** that would support mandatory detention.

Because Petitioner's case proceeds in the context of **defensive removal proceedings, no credible fear interview was conducted** in connection with the current proceedings.

## C. Family Hardship and Medical Concerns

Petitioner is the **sole financial provider** for his household. Petitioner's spouse, **Jesica Marcela Ferrucho Romero**, is unable to work because she must provide **full-time care** for their **U.S.-born triplets**, who were born **prematurely on July 19, 2024** and are currently **approximately eighteen months old**.

Since Petitioner's detention, the family has experienced **severe economic hardship**. The household receives **no Section 8 housing assistance** and **no SNAP benefits**.

Following Petitioner's detention, one triplet, **Antonella Burgos Lopez**, developed **feeding refusal** and was diagnosed with **low iron**, requiring pediatric medical attention. Petitioner's spouse has explored childcare options in order to seek employment, but the **cost of daycare for three toddlers exceeds any realistic earnings**, rendering continued detention **financially devastating and unsustainable** for this family.

## D. Continued Detention Without Individualized Review

Petitioner has **not received a bond hearing, custody redetermination, or any individualized custody determination by** an Immigration Judge assessing danger or flight risk. No such hearing has been scheduled to date.

**The Government has presented no evidence that Petitioner poses a danger to the community or a flight risk, notwithstanding Petitioner's deep ties to Michigan and strong family and community support.**

Prior to undersigned counsel's recent appearance, **no bond request had been filed**, and **no Immigration Judge custody decision exists** from which an administrative appeal could be taken. Accordingly, **no appeal has been filed with the Board of Immigration Appeals**, and **no petition for review has been filed with the United States Court of Appeals**, because **no final removal order or custody determination exists**.

Any exhaustion requirement is therefore **excused**, as Petitioner challenges the **present legality of his physical detention**, no **prompt or adequate administrative remedy** exists to address the **unlawful mandatory detention classification**, further delay would cause **irreparable harm** to Petitioner and his **U.S.-citizen children**, and ICE continues to detain Petitioner **without providing a timely, individualized custody hearing**.

**Undersigned counsel recently accepted representation and, in the exercise of professional judgment and experience, determined that immediate judicial intervention is required. A bond request alone would not remedy the unlawful statutory classification or the ongoing constitutional violations alleged herein.**

### E. Verification

Petitioner is presently detained and **unable to promptly execute a verification** due to the **urgency of the constitutional violations** alleged herein. This Petition is filed by **undersigned counsel with Petitioner's authorization.** A **sworn declaration by Petitioner will be submitted promptly upon execution.**

## CLAIM ONE

### ICE's Mandatory Detention Classification Under INA § 236(c) Is Unlawful

Petitioner incorporates by reference all preceding paragraphs as if fully set forth herein.

Section 236(c) of the Immigration and Nationality Act mandates detention **only** for narrowly defined categories of noncitizens who are **deportable or inadmissible by reason of specific criminal convictions or terrorism-related grounds** enumerated in the statute.

Petitioner **has no qualifying criminal convictions** and does not fall within **any category of noncitizen subject to mandatory detention under INA § 236(c)**. ICE has nevertheless classified Petitioner as a mandatory detainee under § 236(c), **despite the absence of any statutory predicate** that would authorize such detention.

ICE's application of INA § 236(c) to Petitioner therefore **exceeds its statutory authority** and renders Petitioner's continued detention **unlawful.**

Detention without statutory authorization violates the **Immigration and Nationality Act** and constitutes unlawful custody remediable through **28 U.S.C. § 2241**.

This claim challenges **only the statutory basis for Petitioner's present physical detention**, and does **not** seek review of the merits of any removal proceedings.

## CLAIM TWO

### Continued Detention Without an Individualized Bond Hearing Violates the Due Process Clause of the Fifth Amendment

Petitioner incorporates by reference all preceding paragraphs as if fully set forth herein.

The **Due Process Clause of the Fifth Amendment** prohibits arbitrary civil detention. Civil immigration detention must bear a **reasonable relationship to its legitimate governmental purposes** and may not be **excessive in relation to those purposes.** See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Page 6 of 8

Petitioner has been subjected to **prolonged civil immigration detention** without any **bond hearing, custody redetermination, or individualized determination by a neutral decision-maker** assessing whether continued detention is justified based on **danger to the community or risk of flight**.

The Government has **not presented any evidence** that Petitioner poses a danger to the community or a flight risk. To the contrary, Petitioner has **no criminal history**, maintains **deep ties to the community**, and has a **stable family life** in the United States.

By continuing to detain Petitioner **without an individualized hearing at which the Government bears the burden of justifying detention**, ICE has violated the **Due Process Clause of the Fifth Amendment**.

Petitioner's continued detention, imposed **without any individualized assessment** and in the face of **extraordinary humanitarian hardship**, is **arbitrary and constitutionally impermissible**.

## CLAIM THREE

**Prolonged, Unreviewed Civil Detention Is Arbitrary and Not Reasonably Related to Any Legitimate Governmental Purpose**

Petitioner incorporates by reference all preceding paragraphs as if fully set forth herein.

The legitimate purposes of civil immigration detention are limited to ensuring a noncitizen's appearance at removal proceedings and protecting the public from danger.

Civil detention that is **not reasonably related to those purposes**, or that becomes **excessive in relation to them**, violates the **Due Process Clause of the Fifth Amendment**. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Petitioner's continued detention serves **neither purpose**. Petitioner has **no criminal history**, poses **no danger to the community**, and has **strong family and community ties** that ensure his appearance at future immigration proceedings.

In the absence of any individualized custody determination, any statutory authority for mandatory detention, or any evidence supporting danger or flight risk, Petitioner's continued detention is arbitrary, excessive, and divorced from its civil justification.

Detention imposed under these circumstances is **constitutionally impermissible** and constitutes unlawful custody remediable through **28 U.S.C. § 2241**.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that this Court:

**A. ORDER Petitioner's immediate release** from the custody of **U.S. Immigration and Customs Enforcement**, subject to **appropriate conditions of supervision**, as the Court deems necessary;

**OR, IN THE ALTERNATIVE,**

**B. ORDER that Petitioner receive a prompt, constitutionally compliant individualized bond hearing,** to be held **within seven (7) days** of this Court's order, **at which the Government bears the burden of proving by clear and convincing evidence** that Petitioner's continued detention is justified based on **danger to the community or risk of flight**; and

**C. GRANT such other and further relief** as the Court deems **just and proper**.

The relief requested herein is directed **solely to the legality and constitutionality of Petitioner's civil immigration detention** and does **not** seek review of the merits of any removal determination or immigration benefit adjudication.

Respectfully submitted,
Byron H. Nolen,

/s/Byron H. Nolen
BYRON H. NOLEN(P55118)
Attorney for Plaintiffs
358 Sunningdale Drive
Inkster, MI 48141
(734) 620-9685
USCIS Account#HH296275

# DECLARATION OF BYRON NOLEN
# PURSUANT TO 28 U.S.C. § 1746

I, **Byron Nolen**, declare as follows:

1. I am an attorney licensed to practice law and am counsel of record for **Petitioner Miguel Angel Burgos Lopez (A# 220-751-504)** in the above-captioned matter. I make this declaration based upon my personal knowledge and review of the case file.

2. I was retained to represent Petitioner on or about **January 9, 2026**. Petitioner is presently detained by **U.S. Immigration and Customs Enforcement** at the **North Lake Processing Center** in Baldwin, Michigan.

3. Petitioner is currently in civil immigration detention and is unable to promptly execute a verification of the Petition due to the conditions of confinement and the urgency of the constitutional issues presented.

4. This **Petition for Writ of Habeas Corpus** has been filed with Petitioner's authorization in order to prevent ongoing and irreparable harm arising from his continued detention, including interference with access to counsel and preparation for his **preliminary asylum hearing scheduled for January 20, 2026**.

5. In the exercise of my professional judgment and experience, I determined that immediate judicial intervention is necessary. No prompt or adequate administrative remedy exists to address the statutory and constitutional violations alleged, and further delay would cause irreparable harm to Petitioner and his U.S.-citizen children.

6. A request for a bond hearing alone would not remedy the unlawful mandatory-detention classification or the ongoing constitutional violations described in the Petition.

7. A sworn declaration by Petitioner will be submitted promptly upon his ability to execute the same.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14th day of January, 2026.

**Byron Nolen (P55118)**
Attorney for Petitioner
The Nolen Law Firm
358 Sunningdale Drive
Inkster, MI 48141
(734) 620-9685
bnolen@comcast.net

## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

## I. HABEAS JURISDICTION AND STANDARD OF REVIEW

Federal courts have jurisdiction under **28 U.S.C. § 2241** to review the lawfulness of civil immigration detention imposed by the federal government. See *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). Habeas corpus remains the traditional and appropriate vehicle through which a noncitizen may challenge the **fact or legality of physical custody**.

Although Congress has limited judicial review of certain discretionary immigration determinations, it has **not eliminated habeas jurisdiction** over **constitutional and statutory challenges to detention itself**. See *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). The **Suspension Clause** preserves the availability of habeas relief where a noncitizen alleges unlawful executive detention.

Petitioner does **not** seek review of the merits of any removal determination or immigration benefit adjudication. This Memorandum addresses **only the legality and constitutionality of Petitioner's continued civil immigration detention**.

## II. DETENTION UNDER INA § 236(c) WITHOUT A STATUTORY PREDICATE IS UNLAWFUL

Mandatory detention under **INA § 236(c)** applies only to **narrowly defined categories of noncitizens** who are removable or inadmissible by reason of **specified criminal convictions or terrorism-related grounds**. 8 U.S.C. § 1226(c). It is the **exception**, not the rule.

Where ICE detains a noncitizen under § 236(c) **without a qualifying statutory predicate**, detention exceeds statutory authority and is unlawful. See *Demore*, 538 U.S. at 516–17.

As alleged in the Petition, ICE has classified Petitioner as a mandatory detainee **despite the absence of any qualifying conviction or statutory basis**. Detention resting on such a misclassification violates the Immigration and Nationality Act and is remediable through habeas relief under § 2241.

## III. DUE PROCESS REQUIRES INDIVIDUALIZED CUSTODY REVIEW

Civil immigration detention is subject to the constraints of the **Due Process Clause of the Fifth Amendment**. *Zadvydas*, 533 U.S. at 690. Even where detention is initially authorized, it must remain **reasonably related to its regulatory purposes** and may not become **excessive, arbitrary, or punitive**.

Page 1 of 2

The Sixth Circuit has recognized that **prolonged detention without individualized review** raises serious constitutional concerns. See *Ly v. Hansen*, 351 F.3d 263, 270 (6th Cir. 2003).

As set forth in the Petition, Petitioner has been detained **without any bond hearing or individualized assessment** of danger or flight risk. Continued detention under these circumstances violates due process.

## IV. ARBITRARY DETENTION WARRANTS HABEAS RELIEF

The legitimate purposes of civil immigration detention are limited to **ensuring appearance at proceedings** and **protecting public safety**. *Zadvydas*, 533 U.S. at 690. Detention that does not advance those purposes becomes constitutionally impermissible.

Where detention lacks statutory authority, individualized process, and a reasonable relationship to legitimate governmental objectives, **habeas relief is warranted**.

## V. EXHAUSTION IS NOT REQUIRED OR IS EXCUSED

Exhaustion of administrative remedies is **not jurisdictional** in habeas proceedings challenging detention. In any event, exhaustion is excused where remedies are **inadequate, futile, or where delay would cause irreparable harm**.

Here, Petitioner challenges the **present legality of his physical detention**, and no prompt or effective administrative remedy exists to address the unlawful detention alleged. Under these circumstances, exhaustion should be excused.

## VI. REMEDY

Where detention is unlawful or unconstitutional, the appropriate remedy is **release** or, at minimum, a **prompt, constitutionally compliant bond hearing** at which the Government bears the burden of justifying continued detention. *Zadvydas*, 533 U.S. at 699.

Page 2 of 2

# CERTIFICATE OF SERVICE

I hereby certify that on the _15_ day of _January_, 2026, I caused a true and correct copy of the **Petition for Writ of Habeas Corpus, Memorandum of Law, Attorney Declaration, Exhibits, and Proposed Order** to be served by **U.S. Priority Mail** upon the following Respondents:

**United States Attorney's Office**
Western District of Michigan
330 Ionia Avenue NW
Grand Rapids, MI 49503

**Warden (or Superintendent)**
North Lake Processing Center
(Petitioner's Immediate Custodian)
1805 West 32nd Street
Baldwin, MI 49304

**Director, Enforcement and Removal Operations**
U.S. Immigration and Customs Enforcement
Detroit Field Office
985 Michigan Avenue, Suite 207
Detroit, MI 48226

**Todd M. Lyons**
Senior Official Performing the Duties of the Director
U.S. Immigration and Customs Enforcement
500 12th Street, S.W.
Washington, DC 20536

**Kristi Noem**
Secretary, U.S. Department of Homeland Security
2707 Martin Luther King Jr. Avenue, S.E.
Washington, DC 20528

Page 1 of 2

**Pamela Bondi**
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Service was made in accordance with the Federal Rules of Civil Procedure and applicable local rules.

Respectfully submitted,

Byron H. Nolen,
/s/Byron H. Nolen
**BYRON H. NOLEN (P55118)**
Attorney for Petitioner
The Nolen Law Firm
358 Sunningdale Drive
Inkster, MI 48141
(734) 620-9685
USCIS Account #HH296275

# EXHIBITS IN SUPPORT OF WRIT OF HABEAS CORPUS
## (28 U.S.C. § 2241)

**Petitioner:** Miguel Angel Burgos Lopez
**A-Number:** A220-751-504
**Court:** United States District Court
Western District of Michigan

## EXHIBIT LIST

| | |
|---|---|
| **Exhibit A** | Family and Character Support Letters<br>• Letter from Spouse, Jessica Ferrucho<br>• Letters of Recommendation and Community Support |
| **Exhibit B** | Documents reflecting Petitioner's community ties and financial responsibilities.<br>• Residential lease agreement<br>• Proof of rent payment for November |
| **Exhibit C** | Proof of U.S. Citizen Children and Family Unity<br>• Birth Certificates of the Triplets<br>• United States Passports of the Triplets<br>• Family Photographs |
| **Exhibit D** | Medical Documentation Regarding the Triplets<br>• Letter from Pediatrician's Office Confirming Ongoing Care and Medical Vulnerability |
| **Exhibit E** | Application for Asylum and Withholding of Removal (Form I-589)<br>• Form I-797 receipt notice for Form I-589 |
| **Exhibit F** | U-Visa–Related Filings and Law Enforcement Documentation<br>• Form I-797C Receipt Notice – Petition for Qualifying Family Member of U-1 Recipient<br>• Form I-797C Receipt Notice – Application for Advance Permission to Enter as Nonimmigrant / Waiver<br>• Police Report Supporting U-Visa Petition |

# Exhibit



December 12, 2025

Miguel Ángel Burgos

A# 220-751-504

Dear Judge,

My name is Jesica Marcela Ferrucho Romero, A220 938 465. I met Miguel Ángel Burgos on October 26, 2007, when I was 17 years old and he was 18. We have been together ever since. We had our first daughter, Sara Gabriela Burgos Ferrucho, on January 3, 2009. In Colombia, we both worked very hard. We ran a small business called Valentino Jeans, where we sold clothes and shoes. It was small, but it was ours, and we were proud to have built something with our own hands.

Due to the pandemic, at the beginning of 2021 we were forced to close the business. We tried to reopen at the end of 2021, but criminal organizations began extorting business owners. They came pretending to be government officials, and later demanded money, threatening everyone who refused. We also made the mistake of taking a loan from "los gota a gota," but December was not profitable, and we could not pay it back. On our daughter's 13th birthday, January 3, 2022, we took her to the mall to celebrate, and Miguel was beaten. After that, we feared for our lives. That is when we decided to flee for safety and come to the United States.

We first arrived in New York and later came to Michigan. Here we rented a small home, and on November 17, 2023, we experienced a violent incident when an armed man broke into our house. Please refer to the attached police report. It was extremely traumatic. I am thankful for Miguel's courage and assistance that day. That moment reminded me of the strength of our love and the commitment we made to face any hardship together.

In February 2024, I found out I was pregnant. At first, we were happy. But when the doctor told me I was expecting triplets, I fell into depression. It was a blessing, but I could not process the fear of carrying three babies at once. Miguel would become the sole provider, and the responsibility felt overwhelming. But Miguel comforted me, supported me, and carried me through that difficult time.

Our babies were born premature. When we finally brought them home, they needed to be fed every two hours. Miguel would stay up with me at night, taking turns with one of the babies so I would not be alone. There were many nights he went to work without any sleep at all. Even our pediatrician was surprised at how well the babies were doing — gaining weight and growing strong — despite how difficult caring for three premature infants is. That was because Miguel never gave up, no matter how exhausted he was.

When Miguel was detained, my whole world collapsed. The babies consume three containers of formula every two days and a half. I suddenly had no way to keep a roof over their heads. We do not receive Section 8 or SNAP. My husband was covering everything with his work. I checked with several daycares, but the cost for three toddlers was far more than what I could ever earn weekly. I am trapped in an impossible situation.

What is worse, one of our babies, the girl Antonella Burgos Lopez, stopped eating after Miguel was detained. I had to make an emergency appointment with the pediatrician, and they found she now has

low iron, something that had never happened before. She seems withdrawn, and although I am doing everything I can to give her extra attention, anyone can clearly see the change in her behavior.

Judge, I am begging you with all my heart: please release my husband. Our children need their father. I cannot do this alone. We are not a flight risk. We respect the laws of this country, and Miguel will go to every hearing and every appointment required. He just needs to come home so we can survive both emotionally and financially.

Thank you for your time and understanding."

Respectfully,

Jesica Marcela Ferrucho Romero
(Signature)

A220 938 465

313-936-6166

December 18, 2025

Miguel Ángel Burgos

A# 220-751-504

Dear Immigration Judge,

My name is Angela Kuesha, and I have known Miguel and his family for the past three years. First, I would like to share my background with you. I came to the United States as a permanent resident when I was 17 years old. I worked and went to college at the same time. I am also an immigrant and a proud citizen of the United States. This is my home, this is where my family lives, and this is where my daughter was born. I am a proud American, and I deeply love this country.

I have taken every opportunity this country offers to better my life, and everything I own, I earned with hard work. I work remodeling houses with New Beginnings 369 LLC, and I also work as a professional interpreter for the City of Sterling Heights – 41A District Court, 20th District Court (Dearborn Heights), and Warren 37th District Court.

In my professional work, I have seen firsthand how some immigrants who arrived in recent years break the law, do not contribute to the economy, and are not deserving of the privilege of staying in this country. With that being said, this is the only letter of support I have ever written, and I am only writing it because I know Miguel personally and believe he is truly a contributing member of our society.

I met Miguel while I was remodeling a house in the city of Inkster that was going to become a sober living home. In that project, Miguel assisted with drywall, insulation, mudding, and painting. He was punctual, professional, and reliable. As a result of the excellent quality of his work, I later hired him to remodel the basement in my own home. That was two years ago, and it was after this work that he introduced me to his family.

At the time, Jessica was pregnant with their triplets. It was a very difficult pregnancy because it was high-risk, and she had to stop working. Their household had to depend entirely on Miguel's income. Miguel asked me if I could refer him for more work, and I did, because I knew his work quality and his strong work ethic.

When Miguel was detained at the ICE checkpoint, Jessica called me to ask if I could refer her to an attorney I knew. Unfortunately, they were all unaffordable for her. She told me she had to sell Miguel's truck to pay bills and to make sure she could afford formula for the triplets. During our conversation, I asked her if she received any public assistance for the babies, and she told me they do not receive SNAP; Miguel's work was covering all their expenses.

With the help of some friends, we purchased a full month of groceries for her from Costco. The cost of formula and basic necessities for three small children added up quickly, and the bill was close to $1,500. While we were glad to help, it is not realistic for us to collect this amount every month to support the family. They need Miguel home. He is the only provider and the foundation of their stability.

I am testifying to Miguel's good moral character. He is an honest, respectful, hardworking man who contributes to his community and provides for his family. I respectfully ask that you release him so he can be reunited with his wife and their three U.S.-citizen babies, and continue providing for them.

I also make a personal commitment to the Court: I will help ensure that Miguel attends all future hearings and ICE appointments. I believe in him, and I believe he is a valuable member of our society who deserves the chance to continue his life while his case proceeds.

Thank you for your time and consideration.

Respectfully,

_Angela K_  12/18/2025
Signature of Angela Kuesha

Angela Kuesha

2062 Markese Ave

Lincoln Park, MI 48146

248-906-5990

369teslaak@gmail.com

December 16, 2025

To: The Judge and ICE

Re: Character Statement for Miguel Ángel Burgos – A220 751 504

Dear Sir/Madam,

My name is Nazih Haidar Akil Youseff. I am the restaurant owner of Papitas Detroit, located at 6749 Greenfield Rd, Detroit. My first contact with Miguel was work-focused, specifically involving several renovations, including one at my restaurant. What has always impressed me about him is his dedication. In the world of construction—and in many other businesses—it is difficult to find someone honest, reliable, and committed. Miguel always met his deadlines with professionalism, and I can firmly vouch for his strong work ethic and impeccable integrity.

I am writing today not only as a former employer of Mr. Miguel Ángel Burgos, but also as a witness to his admirable character and consistency since I have known him for almost four years. What motivated me to write this letter is the profound admiration I have for him. He is a hardworking man and a devoted husband and father. Since his triplets were born, Miguel had to double his workload to remain the sole provider for his family. I have a business and a family, but my wife and older daughter work with me; he has had to do everything on his own because his wife had to stop working to care for the triplets. He is the main economic and emotional pillar for his children. I know his daily efforts, and I know his sole goal is to give them a dignified future.

Miguel has never had any legal issues. He has always respected and followed the laws of this country. He has the full support of his family and friends, and he has deep roots here in Michigan. He is not a danger to society, and he is not a flight risk. Everything I have observed over the years reflects an honorable man who contributes positively to those around him.

Throughout these years, we grew as friends, and I have seen his morality in action. There has never been a single indication of bad intention, dishonesty, or improper conduct on his part. I respectfully ask that you please evaluate his unique circumstances and allow his release so he may be reunited with his family.

Sincerely,

Nazih Haidar Akil Youseff

Email: nazote02@hotmail.com

Phone: 313-707-2008

**Detroit, Michigan**

477 Michigan Avenue

Suite 440

Detroit, MI 48226

**15 December, 2025**

**Dear Judge,**

**Subject: Character Reference Letter**

My name is **Luis Bueno,** identified with number **801052588,** and I am writing this letter to provide a character reference for **Miguel Burgos,** identified with number **A220751504,** whom I have known for three and a half years.

During this time, Miguel has worked for me on several occasions, including the construction and renovation of my bathroom. His work has always been performed with professionalism, dedication, and honesty. I can personally attest that he is a hardworking individual who consistently demonstrates responsibility and integrity in everything he does.

Miguel is also the father of **three one-year-old babies,** whom he supports and cares for. He works tirelessly to provide stability and a better future for his family. Throughout the years I have known him, he has shown strong moral character and has never expressed or demonstrated any intention to cause harm or engage in wrongdoing in this country.

For these reasons, I respectfully offer this recommendation, trusting that it will be helpful in evaluating his character and circumstances.

If you require any additional information, I am available and willing to provide further details.

Sincerely,

**Luis Bueno**

+1(516) 707-4591

luenbupo@yahoo.com

# Exhibit



# RESIDENTIAL LEASE AGREEMENT

**NOTICE: Michigan law establishes rights and obligations for parties to rental agreements. This agreement is required to comply with the Truth in Renting Act. If you have a question about the interpretation or legality of a provision of this agreement, you may want to seek assistance from a lawyer or other qualified person.**

This Lease Agreement (the "Lease") is entered into and effective as of June 01, 2025 ("Effective Date"), by and between **Sisters & Friends LLC** whose address is 2051 W. Davison St, Detroit, MI 48238 (the "Landlord"), and **Miguel Angel Burgos Lopez** whose address is 16614 Washburn Street, Detroit, MI 48221 (the "Tenant"), on the terms and conditions set forth below.

1. **Basic lease provisions.** The basic lease provisions are stated forth below and further explained in the section referenced to the right of each provision:

| | | |
|---|---|---|
| (a) | Leased Premises 16614 Washburn Street, Detroit, MI 48221 | See §2 |
| (b) | Term: 1 year | See §3 |
| (c) | Lease Commencement Date: 06/01/2025 | See §3 |
| (d) | Lease Expiration Date: 05/31/2026 | See §3 |
| (e) | Base Rent: $ 1,050 per month | See §4 |
| (f) | Rent Due Date: 06/01/2025 | See §4 |
| (g) | Security deposit: $ 1,050 | See §6 |
| (h) | Total due at lease execution: $ 2,100 | See §4; 6 |
| (i) | Names of all occupants: **Miguel Angel Burgos Lopez** | See §6 |

2. **Premises.** The Tenant leases from Landlord the real property located commonly known as _____ 16614 Washburn Street, Detroit, MI 48221, and legally described as:

Parcel ID: **16039267.**

E WASHBURN 33 COLLEGE VIEW SUB L45 P49 PLATS, W C R 16/325 40 X 106

1

together with any furnishings, fixtures, personal property, and appurtenances furnished by Landlord for Tenant's use (collectively the "Premises). All furnishings in the furnished Premises are part of the Premises. **Tenants have received a move-in inventory checklist and will return a completed copy of it to Landlord within seven (7) days after receiving it**. The Premises are conclusively presumed to be in good condition at move-in, unless Tenants specify objections on the move-in inventory checklist. Such objections are not a request for repairs.

3. **Term.** The term of this Lease shall be as stated in above Section 1(b), commencing on the "Lease Commencement Date", as stated in above in Section 1(c), and ending on the "Lease Expiration Date", as stated above in Section 1(d). Tenant shall receive possession on the signing of the Lease.

4. **Rent.**

   a. ***Base Rent.*** Tenant shall pay Landlord, by check or money order, at the address stated above or an address designated by Landlord, monthly base rent installments as stated in Section 1(e), payable in advance, on or before the first day of each month during the term of this Lease (the "Due Date"). Tenant shall pay the first (prorated) base rent installment in the amount of $ __1050__ on signing of the Lease, as stated above in Section 1(h).

   b. ***Late Fees and NSF Fees.*** Tenant shall pay Landlord a late fee of **$50.00** for each monthly installment not received by Landlord within five (5) days of its Due Date. In addition to late fees, Tenants will pay Landlord **$35.00** for each check to Landlord that is dishonored. Late fees and dishonored check fees will be paid by the Due Date of the next regularly scheduled rental installment. Late fees and dishonored check fees shall be considered Additional Rent and shall reimburse Landlord for costs incurred because of late payments. All rent paid after the Due Date and payments to cover checks that have been returned for insufficient funds must be paid at the place designated for payment, by cashier's check, certified check, or money order.

   c. ***Application of Money.*** Money or rent received by Landlord from Tenant, or on his/her behalf, shall be applied to Tenant's account as follows: (1) to satisfy unpaid late fees, dishonored check fees, and other fees owed by Tenant; (2) to maintenance and repair costs chargeable to Tenant; (3) to legal fees and court costs legally chargeable to Tenant, including costs incurred prior to curing a default; (4) to outstanding utility bills that are the responsibility of Tenant; (5) to deposits or portions thereof due from Tenant; (6) to charges, fines, and assessments against Landlord caused by Tenant; and (7) to rent. Restrictive endorsements on a check or statements in communication, including those accompanying a payment, shall not constitute an accord and satisfaction or amend this provision.

   d. ***Additional Rent.*** Tenant shall pay as "Additional Rent" any money and charges required to be paid by Tenant pursuant to the terms of this Lease, whether or not the same may be designated "additional rent." Landlord's right to collect Additional Rent shall be in addition to Landlord's right to take action under other provisions

2

of this Lease due to Tenant's failure to pay rent or other defaults by Tenant under the Lease. The term "Rent" or "rent" shall include monthly rent installments and all additional rent amounts required to be paid by Tenant pursuant to the terms of this Lease.

5. **Security deposit.** Tenant shall deposit with Landlord a security deposit in the amount stated in Section 1(g) (not to exceed $1\frac{1}{2}$ months' rent) as a security deposit to reimburse Landlord for actual damages to the rental unit or ancillary facilities that directly result from conduct not reasonably expected in the normal course of habitation of a dwelling and to pay Landlord for all rent in arrearage or due for premature termination of this Lease by Tenant and for any of Tenant's utility bills not paid by Tenant. Tenant is liable for any balances remaining unpaid after Landlord applies the security deposit to such amounts. The security deposit will be deposited at the following financial institution and may be mingled with the security deposits of Landlord's other tenants:

> Huntington Bank
> 6412 Woodward Ave
> Detroit, MI 48202

**YOU MUST NOTIFY YOUR LANDLORD IN WRITING, WITHIN 4 DAYS AFTER YOU MOVE, OF A FORWARDING ADDRESS WHERE YOU CAN BE REACHED AND WHERE YOU WILL RECEIVE MAIL; OTHERWISE YOUR LANDLORD SHALL BE RELIEVED OF SENDING YOU AN ITEMIZED LIST OF DAMAGES AND THE PENALTIES ADHERENT TO THAT FAILURE.**

6. **Use.** Tenant shall use the Premises for solely as a private dwelling. Tenant shall not allow any other person, other than those listed in this Lease, to use or occupy the Premises for more than 24 hours without first obtaining Landlord's written consent to such use. Tenant shall comply with any and all laws, ordinances, rules and orders of any and all governmental or quasi-governmental authorities affecting the cleanliness, use, occupancy and preservation of the Premises. Occupancy must not exceed the number mandated by local ordinance. No persons other than those listed in above in Section 1(i) shall occupy the Premises for more than seven (7) days during the term of this Lease without prior written consent from Landlord. No part of the Premises shall be used at any time during the term of this Lease by Tenant for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than as a private single family dwelling. Tenant agrees that neither Tenant, nor a member of Tenant's household, nor any other person under Tenant's control will unlawfully manufacture, deliver, possess with intent to deliver, or possess a controlled substance on the Premises. Basements, attics, and other rooms must not be used as bedrooms or sleeping rooms if they do not comply with the local ordinance for windows, minimum square footage, exits, and ventilation. This is meant to protect Tenant's health and safety.

3

7. **Condition of the Premises.** Tenant acknowledges that no representations about the condition of the Premises or promises to alter or to improve the Premises before or during the term of the Lease have been made except as stated in this Lease, and that Tenant takes possession of the Premises "as-is".

8. **Maintenance, repairs, and damage of the Premises.** Tenant shall maintain the Premises in a neat, clean and orderly manner; use and maintain the Premises in accordance with all police, sanitary and other applicable regulations and restrictions imposed by any government authority and any homeowner's association; observe all reasonable regulations and requirements of underwriters concerning use and condition of the Premises tending to reduce fire hazard and Insurance rates; and immediately inform Landlord when there is a need for Landlord to perform repairs or maintenance. Tenant shall not cause or permit any rubbish, waste, misuse of any utility fixture, or storage of inflammable liquids and/or explosives on the Premises. Tenant shall pay for and/or reimburse Landlord for: all damages caused by Tenant's rubbish, waste, misuse, or storage of inflammable liquids and/or explosives; for all permit, inspection, and certification costs Landlord incurs because of Tenant's noncompliance with this Lease or applicable laws; and all damages resulting from not reporting the need for repair or maintenance in a reasonably timely manner. Landlord may invoice Tenant for the cost of any repairs/replacements (other than normal wear and tear) during the Lease term, in which the amount of such invoices shall be considered Additional Rent and shall be due on the Due Date with the rent installment for the month following the month in which the invoice is sent. Tenant shall pay and be liable to Landlord and/or Landlord's insurer (in contract and/or tort) for the repair of all damage to and/or replacement of the Premises and structure of which they are a part, including fire and flood damage thereto and all lost rents therefrom, in any way caused or made necessary by Tenant, their guests, invitees, licensees, or agents. Nothing in this clause shall waive or lessen Landlord's obligation to maintain and repair the Premises under Michigan law, but Landlord is not liable when it has not been informed of the need to repair. Landlord's reasonable exercise of any right or obligation hereunder shall never be deemed an eviction of Tenant or interference with their use and possession of the Premises, and Landlord shall have no liability to Tenant because of Landlord's actions in reasonably fulfilling its obligations hereunder.

If the Term of the Lease is for a period of one year or more, Tenant shall make necessary repairs and replacements in the Premises at Tenant's expense. Landlord may inspect the Premises at all reasonable times in its sole discretion. Landlord may demand Tenant(s) make repairs, and if Tenant(s) fails or refuses to make adequate repairs within a reasonable period of time, Landlord may make them and Tenant(s) shall reimburse Landlord for the costs of repairs with the second rental payment due after receipt of Landlord's written demand for payment. Tenant(s) is not responsible for repairs or improvements of a capital nature, including, but not limited to: furnace, hot water heater, any substantial portion of the roof or exterior walls, except to the extent the repair or replacement of such items are necessitated by the action of Tenant(s) or Tenant(s)' guests. All repairs or replacement performed by Tenant(s) or at the direction of Tenant(s) must be approved by Landlord in writing. Tenant(s) shall be responsible for the cost of all insect, rodent, and pest control, beginning one month after occupancy commences. Tenant(s), at its own expense during

the continuation of the Lease, shall also be responsible for routine care and maintenance of the yard and outside areas, including: landscaping, including but not limited to mowing, watering, fertilizing, weeding, raking, and trimming; removing snow and ice from walkways and driveways; and cleaning and maintaining patio, driveway, porch, etc. Tenant(s) will not remove or rearrange the landscaping without prior written consent of Landlord. In the event Tenant fails to do any of the above responsibilities, Landlord shall have the right to acquire professional services to maintain the lawn, landscaping, and snow removal. Landlord may invoice Tenant(s) for the cost of maintenance during the term of this Lease. The amount of such invoices is deemed unpaid rent and shall be due on the Due Date with the rent installment for the month following the month in which the invoice is sent. Tenant(s) will be responsible for monthly checks of all smoke detectors. If Tenant(s) is unable to or does not wish to change the battery and/or smoke detector, Tenant(s) must call the Landlord to do it. Notwithstanding the foregoing, Tenant{s) does not waive any remedies available to Tenant(s) for any violation of covenants of fitness and habitability.

In order that Landlord may be able to affect repairs, maintenance and/or pest control treatment requests efficiently and economically, Tenant agrees that any demand for such repairs, maintenance and/or pest control treatment shall be submitted to Landlord via the Tenant's Resident portal from Buildium, a RealPage Company: **https://huapi-llc.managebuilding.com/Resident/portal/login**, immediately upon Tenant's discovery, and that any such demand shall include all repairs, maintenance, and/or pest control treatment requests deemed necessary by Tenant at the time of such notice. Whenever a request is submitted, the description of the works shall be as detailed as possible and must include a **time window of 2 hours on two different dates** to enable Landlord to properly address the request. All properly made requests for repair, maintenance or treatment will be considered and addressed by Landlord in its sole discretion. All charges for maintenance repairs and/or treatment required due to a Tenant's and/or an Occupants actions or lack of actions will be assessed to Tenant and shall be considered Additional Rent which shall be payable to Landlord on the Due Date with the rent installment for the month following the month in which said demand is sent. In case further assistance with the Tenant's Resident Portal from Buildium, a RealPage Company, is needed, please call the following number: 313-462-0057.

If Tenant plans to be away from the Premises for any length of time, the heat must be left on during the cold season and the windows closed to avoid broken pipes and water damage.

9. **Alterations**. Alterations to the Premises without Landlord's prior written consent are prohibited. Landlord is not liable to reimburse Tenant for any alteration, unless agreed in writing. Alterations are the property of Landlord, but upon Lease expiration or earlier termination, Landlord may designate, in writing, alterations it wishes to have removed, and Tenant, at his/her own expense, shall remove them promptly and repair any damage caused thereby, leaving the Premises in the same condition they were in before the alteration. By way of example, alterations may include, but are not limited to: paint, wallpaper, flooring, telephone or cable lines, driving nails into woodwork, or use of adhesive material on walls. Written approval by Landlord shall not be construed by Tenant that Landlord assumes the expense or liabilities nor shall such written approval alter the promise of Tenant to pay rent under this Lease.

10. **Utilities.** For the entire Lease term, Tenant is responsible for the costs of the utilities and services for the Premises as follows:

| | | | |
|---|---|---|---|
| ☒ Tenant | ☐ Landlord | ☐ Not Applicable | pays for electricity. |
| ☒ Tenant | ☐ Landlord | ☐ Not Applicable | pays for gas/energy. |
| ☒ Tenant | ☐ Landlord | ☐ Not Applicable | pays for water and sewage. |
| ☒ Tenant | ☐ Landlord | ☐ Not Applicable | pays for trash removal. |
| ☒ Tenant | ☐ Landlord | ☐ Not Applicable | must dispose of all trash by placing in a designated container. |
| ☒ Tenant | ☐ Landlord | ☐ Not Applicable | must mow/water the lawn. |
| ☒ Tenant | ☐ Landlord | ☐ Not Applicable | remove snow and ice from driveway, parking area, walkway, and steps. |
| ☐ Tenant | ☐ Landlord | ☒ Not Applicable | change the screens and storm doors as weather dictates. |
| ☐ Tenant | ☐ Landlord | ☐ Not Applicable | |
| ☐ Tenant | ☐ Landlord | ☐ Not Applicable | |

Landlord is responsible for the payment of the cost of the services and utilities listed above and not marked for payment by Tenant. Utilities that are the responsibility of Tenants shall be placed in Tenants' name within three (3) days of Lease execution. Tenants shall pay all charges of utility providers because of late payment or other default. Landlord is not responsible for utility service interruptions that are beyond its control or due to necessary repairs, replacements, or alterations.

11. **Taxes.** Landlord shall be responsible for any real property taxes and special assessments levied against the Premises during the term of this Lease. Tenant is responsible for the payment of any personal property taxes levied against the Premises during the term of the Lease. The rental amount set forth above may be changed proportionately in the event there is an increase in property taxes and/or special assessments, on a yearly basis by providing Tenant thirty (30) days written notice.

12. **Assignments and subleases.** Tenant shall not assign this Lease or sublease any part of the Premises.

13. **Access to the Premises.** Tenant shall allow Landlord and Landlord's agents reasonable access to the Premises to inspect, repair, alter, or improve the Premises. Tenant shall also allow insurance carriers and representatives, fire department inspectors, police, or local health authorities to inspect the Premises to the extent permitted by law, or for other purposes reasonably related to the operation of the Premises. Except during an emergency

or when Landlord reasonably believes there is an emergency, all entries shall be made during reasonable hours and Landlord shall make reasonable efforts to inform Tenant of its intention to enter the Premises. Tenant shall allow Landlord or Landlord's agents to show the Premises to prospective Tenants at all reasonable times upon reasonable notice to Tenant.

14. **Keys.** Landlord must retain a key to the Premises throughout the Lease. Tenant may not alter or change any lock to the Premises without Landlord's prior written consent. Tenant has been provided with two (2) keys to the Premises. Copying of keys is prohibited. Upon expiration or earlier termination of this Lease, Tenant must return to Landlord all keys to the Premises. . On or before the termination of this lease, Tenant must return all keys or Tenant will be charged $ 50 for changing the locks. If Tenant loses the keys Landlord will provide an extra key to Tenant and may charge Tenant $50.00 which shall be immediately due and owing to Landlord.

15. **Vacation or abandonment of the Premises.** If Tenant removes substantially all Tenant's property from the Premises, Landlord may immediately enter and redecorate the Premises without abatement of rent; and these acts shall not affect Tenant's obligations under this Lease. If Tenant abandons the Premises before the Lease expires, all rent for the remainder of the term of the Lease shall immediately become due. For the purposes of this Section, abandonment is conclusively presumed if rent is unpaid for fifteen (15) days following the due date and (i) a substantial portion of Tenant's possessions have been removed, or (ii) acquaintances of Tenant or other reliable sources indicate to Landlord that Tenant has left without intending to re-occupy the Premises. If Tenant abandons or surrenders the Premises at any time and leaves personal property therein, Landlord may dispose of it however Landlord chooses, and Tenant shall reimburse Landlord for all costs incurred in that regard.

16. **Property loss or damage.** To the extent permitted by law, Landlord and Landlord's agents shall not be liable for any damage to property or loss of property that is caused by theft or casualty on the Premises. Landlord and its agents do not provide any insurance coverage for personal property of Tenants, their guests, or invitees and shall not be liable for any damage, loss, or destruction of such property from any cause, including acts or omissions of third parties, including, but not limited to, fire and/or the bursting, stopping, backing up, or leaking of water, gas, electricity, and/or sewers and/or loss of use of the Premises, unless caused by Landlord's or its agents' nonperformance or negligent performance of a duty imposed by law or by their grossly negligent or intentional actions. Landlord requires that Tenant(s) execute and fully comply with the Indemnification and Property Damage Liability Addendum attached hereto and hereby incorporated. **TENANTS ARE ENCOURAGED TO INSURE THEIR PERSONAL PROPERTY.**

17. **Termination.** Tenant shall return the Premises and any furnishings therein to Landlord at the expiration of this Lease, or earlier termination, in the same condition as when received, reasonable wear and tear excepted. Tenant agrees to provide thirty (30) days written notice of intent to vacate prior to the expiration, termination, or any extension of this Lease. Early surrender of the Premises, including surrender accepted in writing, does not extinguish any of Tenant's obligations to perform under this Lease, including payment of all rent, subject to Landlord's duty to mitigate. Tenant(s) agrees to remove all personal property from the

7

Premises at time of vacating and if Tenant(s) fails to do so, Tenant(s) agrees to a charge for removal and disposal of the personal property. When this Lease terminates, Tenant shall surrender possession of the Premises to Landlord in the condition they were in when they were delivered to Tenant, except for normal wear and tear. Tenant shall also return all keys for the Premises to Landlord.

18. **Holding Over.** Tenant shall vacate the Premises on or before the Expiration Date of the Lease. If Tenant retains possession thereafter without Landlord's written permission, Landlord has thirty (30) days from the last day of the Lease to sue Tenant for possession under MCL 600.5714(1)(C)(ii) of the Michigan Summary Proceedings Act (holding over after lease expires). If suit is not commenced within that time, the tenancy shall continue on a month-to-month basis from the date the Lease expires, and all other covenants of the Lease shall remain in full force and effect; rent, however, shall increase by fifty percent (50%), beginning on the first day after Lease expiration, regardless of whether suit is brought or tenancy becomes month-to-month. Acceptance of money by Landlord from Tenant during the thirty (30) days following expiration of the Lease does NOT waive Landlord's right to seek possession as described in this Sextion, and Tenant shall compensate Landlord for an damages caused by the unauthorized holdover.

19. **Limited Cancellation Rights.**

   a. TENANT WHO HAS A REASONABLE APPREHENSION OF PRESENT DANGER TO HIM OR HIS CHILD FROM DOMESTIC VIOLENCE, SEXUAL ASSAULT, OR STALKING MAY HAVE SPECIAL STATUTORY RIGHTS TO SEEK A RELEASE OF RENTAL OBLIGATION UNDER MCL 554.601B.

   b. If Tenant has occupied the unit for more than 13 months and Tenant becomes eligible during the lease term to take possession of a subsidized rental unit in senior citizen housing and provides Landlord with written proof of that eligibility or Tenant becomes incapable during the lease term of living independently, certified by a physician in a notarized statement, Tenant may terminate this lease with a 60-day written notice to Landlord.

20. **Defaults.** Tenant's noncompliance with any terms or covenant of this Lease shall be considered a default. Tenant is also in Default of this Agreement if any of the following occur:

   a. Tenant fails to pay rent or any other sum required under this Lease when due.

   b. A health hazard or extensive and continuing physical injury to the Property exists. Landlord or their Agent may terminate the Agreement by providing seven (7) days written notice to Tenant.

   c. Tenant, a member of the Tenant's household, or other person under the Tenant's control has manufactured, delivered, possessed with intent to deliver, or possessed a controlled substance on the leased premises. Landlord or their Agent may terminate this lease by providing twenty-four (24) hour written notice to Tenant.

8

    d.   Tenant files bankruptcy or the estate of Tenant passes to a receiver appointed by a court of proper jurisdiction.

    e.   Tenant is chronically late with rent payments. Chronic late payment is defined as rent paid after the Due Date on three (3) or more occasions per year.

    f.   Tenant fails to meet the cooperate with Landlord, it's representatives, its property managers, and its affiliates, for the purposes of showing the property to prospective tenants or purchasers in the manner required under this Lease.

    g.   Tenant breaches any other provision of this Lease, in which event, Landlord may terminate the Lease by providing one (1) month's written notice to the Tenant. The parties hereby agree that each and every provision of this Lease is material provision of this Lease and any such violation shall be deemed a material breach of this Lease.

21. **Landlord's Remedies.** If Tenant defaults on this Lease, Landlord may utilize all remedies legally permitted, including terminating the tenancy, and declaring all remaining rental installments immediately due and owing, and entering the Premises as permitted by law; Tenant and any other occupants shall surrender the Premises to Landlord by the date requested. If Landlord terminates the tenancy of Tenant pursuant to this Section, Tenant's duty to pay rent will continue, subject to Landlord's duty to mitigate damages, and either party may have a court determine the actual amount owed. If other premises owned or managed by Landlord are available for lease, it shall not be unreasonable for Landlord to lease them before Tenant's Premises. If Landlord terminates this tenancy or obtains a judgment against Tenant for possession that is not redeemed, all renewals, lease extensions, or leases for a future term that Landlord and Tenant(s) have executed, or to which they have agreed, are null and void. Tenant shall reimburse Landlord for all legal fees, costs, and expenses legally recoverable and for all damages caused by his/her default. At the expiration of the applicable Lease term, this Lease will terminate and Landlord will be entitled to possession of the Premises and will have the right to institute summary proceedings to evict Tenant in accordance with applicable law. Tenant acknowledges that an order of eviction/writ of restitution may be issued by the court immediately after entry of a judgment for possession. If Tenant breaches any other provision of this Lease, Landlord may terminate this Lease by providing 30 days written notice to Tenant unless specifically provided otherwise in this Lease.

22. **Notices.** Any notices under this Lease shall be in writing and delivered to the recipient personally or by first-class mail fully prepaid at the recipient's last known address. Unless otherwise required by law, the date of service shall be the date of hand delivery or the mailing date.

23. **Damage or destruction to Premises; Untenantability.** If the Premises become wholly untenantable by fire or other casualty during the term of this Lease, Landlord may terminate this Lease by written notice to Tenant(s), and Tenant(s) shall surrender the Premises to Landlord. If for the same reasons the Premises become partially untenantable, or wholly untenantable without Landlord terminating the Lease, Landlord shall repair the Premises

9

with reasonable speed. Landlord's obligation to repair the Premises shall be limited to the amount of insurance proceeds actually received by Landlord. From the date of the casualty until repairs are substantially completed, rent shall abate in the same percentage that the Premises are untenantable, unless the untenantability is caused by negligence or intentional misconduct of Tenant(s), their family, occupants, employees, guests, invitees, agents, or anyone on the Premises by reason of association with any of them, in which case rent shall not abate. For purposes of Landlord's right to terminate this Lease, the Premises are "wholly untenantable if 20% or more percent of the Premises are untenantable. Landlord shall not be liable for any reasonable delay or for providing housing for Tenant during repairs.

24. **Security Not Promised.** Tenant has inspected and acknowledges that all door and window locks, fire extinguisher's, security alarm systems, smoke detectors and/or carbon monoxide detectors are in sound working order. Tenant further understands and acknowledges that although the Landlord makes every effort to make the Leased Premises safe and secure, this does not create a promise of security.

25. **Hold Harmless.** Tenant, his or her heirs, and personal representatives to hold Landlord harmless from all damages, including damages to the Premises and structure of which they are a part; all lost rents for the Premises and structure of which they are a part; and all liability that results from their negligent or illegal use of the Premises and from their intentional misuse of the Premises. When claims against Landlord's insurance are paid because of acts or omissions of Tenant or Tenant visitors, guests, or invitees, Tenant will reimburse Landlord for any insurance deductible it pays.

26. **Waiver of Subrogation.** Each Party releases the other Party from any liability for loss, damage, or injury caused by fire or other casualty for which insurance is carried by the insured party under a policy which permits waiver of liability and waived the insurer's rights of subrogation, to the extent of any recovery by the insured party under such insurance policy.

27. **Non-Liability.** Landlord shall not be liable for accidents or Injuries to Tenant(s), their family members, guests, or invitees which may occur on the leased Premises (unless caused by landlord's gross negligence of a duty imposed by law) and Tenant(s) will Indemnify and hold Landlord harmless against all claims therefore. **Landlord recommends Tenant obtain renter's insurance at Tenant's own expense.**

28. **Lead-Based Paint Disclosure.** For homes built prior to 1978, Federal regulations require that Landlord provide Tenant(s) with an EPA-approved lease hazard information pamphlet and make certain disclosures to Tenant(s) concerning the presence of known lead- based paint and lead-based paint hazards. Tenant acknowledges receipt of the lead-based paint and lead-based paint hazard disclosure form.

29. **Modifications.** No modifications of this Lease shall be binding unless they are in writing and signed by Landlord and Tenant.

30. **Waiver.** Failure by Landlord to enforce a provision of this Lease on one (1) or more occasions is not a continuing waiver of Landlord's right to enforce the provision. Landlord's

consent to act on one (1) or more occasions (where consent is required) is not a continuing consent to any subsequent similar act by Tenant. No breach is waived by Landlord unless waived in writing.

31. **Whole agreement.** This Lease constitutes the entire agreement between the parties and supersedes any and all other agreements, written or oral, express or implied, pertaining to the Premises or subject matter hereof. No supplements, modifications or amendments of this agreement shall be binding unless executed in writing by all of the parties.

32. **Binding effect.** This Lease shall bind and benefit the parties to the Lease and their heirs, personal representatives, successors, and permitted assigns.

33. **Joint and Several Liability.** Where there is more than one Tenant on the Lease, each Tenant is jointly and severally (individually) liable for all obligations of this Lease. Each Tenant is responsible for his and/or her individual Lease obligations, as well as the obligations of his and/or her co-Tenant(s).

34. **Capacity of Parties.** Landlord is a limited liability company or Corporation that is organized under the laws of the State of Michigan. Tenant is an individual who is competent to enter into this Lease, and who has sufficient credit and/or security to satisfy his obligations under this Lease. In order to ensure Tenant's credit and/or security, Tenant expressly agrees to allow Landlord, or Landlord's agents, to perform background, credit, and other checks using his personal information during the term of this Lease and for collection purposes after the term of this Lease.

35. **Severability.** If any provision of this Lease is invalid, unlawful, or unenforceable to any extent, the rest of the Lease and the application of the provision to persons or circumstances other than those for which it is invalid, unlawful, or unenforceable are not affected.

36. **Class Action Waiver.** Class action lawsuits and any other proceeding where someone acts in a representative capacity are not allowed. The Parties waive any right to assert any claims against any other party or Parties to this agreement as a member in any class or representative action. The combining of individual proceedings without the consent of all the Parties to this agreement is also prohibited. It is agreed that each party to this agreement may bring or file claims against any other party only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative action.

37. **Time of the essence.** Time shall be deemed to be of the essence in the performance of this Lease.

38. **Attachments.** The Seller's Disclosure, Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards, the Inventory Checklist, Receipt for Inventory Checklist and Lease, Indemnification and Property Damage Liability Addendum, and all other disclosures, exhibits, attachments and addendums are incorporated by reference into this Lease.

39. **Effective date.** This Lease is effective on the date first stated in this Lease.

11

\*    \*    \*

*[SIGNATURE PAGE TO FOLLOW]*

The Tenant(s) signing below acknowledge that they have read all pages of this Lease preceding their signatures as well as any exhibits, attachments, or addendums included with this Lease. Tenant(s) understands this Lease, agree to be bound by this contract in its entirety, and sign their name as their own free act and will.

| TENANT | LANDLORD |
|---|---|
| **Miguel Angel Burgos Lopez** | **Sisters & Friends LLC** |
| /s/ _____ <br> By: _____ <br><br> Date: _____ 06/01/2025 <br><br> /s/ _____ <br> By: _____ <br><br> Date: _____ | /s/ _____ <br> By: _____ <br> Its: _____ <br><br> Date: __ 06/01/2025 |

# Payment Receipt

**soul**
PROPERTY MANAGEMENT

Prepared By: Huapi LLC
2051 West Davison Street
Detroit, MI 48238

| Date | Amount Received |
|------|-----------------|
| 11/30/2025 | $1,000.00 |

**Account No.** 1116371
16614 Washburn Street - Sisters & Friends - 16614
Received from:
Miguel Angel Burgos Lopez
16614 Washburn Street
Detroit, MI 48221

| Memo | Payment Method |
|------|----------------|
| Rent | Check 4258 |

Generated 01/08/2026 10:50:52

# Exhibit



LF 9575

CF 2460



STATE OF MICHIGAN
DEPARTMENT OF HEALTH AND HUMAN SERVICES

## CERTIFICATE OF LIVE BIRTH

121- 2024-054999
STATE FILE NUMBER

**CHILD**

| 1. CHILD - NAME (First) | (Middle) | (Last) | (Suffix) |
|---|---|---|---|
| Jacob | | Burgos Ferrucho | |

| 2. SEX | 3a. PLURALITY - Single, Twin, Triplet, etc. (Specify) | 3b. IF NOT SINGLE BIRTH - First, Second, Third, etc. (specify) | 4a. DATE OF BIRTH (Month, Day, Year) | 4b. TIME OF BIRTH |
|---|---|---|---|---|
| Male | Triplet | Second | July 19, 2024 | 19:31 Military |

**PLACE**

| 5a. HOSPITAL NAME (If not hospital, give Street and Number) | 5b. CITY, VILLAGE, OR TOWNSHIP OF BIRTH | 5c. COUNTY OF BIRTH |
|---|---|---|
| Corewell Health Dearborn Hospital | Dearborn | Wayne |

**MOTHER**

| 6a. MOTHER'S CURRENT LEGAL NAME (First, Middle, Last) | 6b. MOTHER'S FULL NAME BEFORE FIRST MARRIED (First, Middle, Last) |
|---|---|
| Jesica Marcela Ferrucho Romero | Jesica Marcela Ferrucho Romero |

| 6c. STATE OF BIRTH - NAME COUNTRY IF NOT USA | 6d. DATE OF BIRTH (Month, Day, Year) | 6e. RESIDENCE - CITY, VILLAGE, OR TOWNSHIP (Check one box and specify) | | 6f. COUNTY | 6g. STATE |
|---|---|---|---|---|---|
| Colombia | September 19, 1990 | ☑ INSIDE CITY OR VILLAGE OF Detroit ☐ TWP OF _____ | | Wayne | Michigan |

**FATHER**

| 7a. FATHER'S CURRENT LEGAL NAME (First, Middle, Last) | 7b. STATE OF BIRTH - NAME COUNTRY IF NOT USA | 7c. DATE OF BIRTH (Month, Day, Year) |
|---|---|---|
| Miguel Angel Burgos Lopez | Colombia | October 28, 1989 |

**INFORMANT**

| 8a. I CERTIFY THAT THIS PERSONAL INFORMATION PROVIDED IS CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF. | 8b. THE PARENT(S) REQUEST THAT INFORMATION ON THIS BIRTH BE RELEASED TO THE SOCIAL SECURITY ADMINISTRATION FOR ISSUANCE OF A SOCIAL SECURITY NUMBER AND CARD. |
|---|---|
| SIGNATURE *Jesica Ferrucho Romero* (PARENT OR OTHER INFORMANT) | ☒ YES   ☐ NO |

**CERTIFICATION**

| 9a. I CERTIFY THAT THE ABOVE NAMED CHILD WAS BORN ALIVE AT THE PLACE AND TIME, AND ON THE DATE AS PROVIDED. | 9b. CERTIFIER'S NAME AND TITLE (Print or Type) |
|---|---|
| SIGNATURE *Kelli K Muscat*          DATE 07/23/2024 | Kelli K Muscat Certifier |

**REGISTRAR**

| 10a. REGISTRAR'S SIGNATURE | 10b. DATE FILED BY LOCAL REGISTRAR (Month, Day, Year) |
|---|---|
| *George Darany* | July 26, 2024 |

DCH-0481H (5/12/10)

Print



State of Michigan )
County of Wayne ) ss.
City of Dearborn )

I do hereby certify that this document is a true copy of the record on file in this office.

**JAN 17 2025**

DATE

REGISTRAR

LF 9576

CF 2461



**STATE OF MICHIGAN**
**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

121- 2024-055001
STATE FILE NUMBER

# CERTIFICATE OF LIVE BIRTH

| | |
|---|---|
| **CHILD** | **1. CHILD - NAME** (First) Joshua | (Middle) | (Last) Burgos Ferrucho | (Suffix) |

| | | | |
|---|---|---|---|
| **2. SEX** Male | **3a. PLURALITY** - Single, Twin, Triplet, etc. (Specify) Triplet | **3b. IF NOT SINGLE BIRTH** - First, Second, Third, etc. (specify) Third | **4a. DATE OF BIRTH** (Month, Day, Year) July 19, 2024 | **4b. TIME OF BIRTH** 19:31 Military |

**PLACE**

| **5a. HOSPITAL NAME** (If not hospital, give Street and Number) Corewell Health Dearborn Hospital | **5b. CITY, VILLAGE, OR TOWNSHIP OF BIRTH** Dearborn | **5c. COUNTY OF BIRTH** Wayne |
|---|---|---|

**MOTHER**

| **6a. MOTHER'S CURRENT LEGAL NAME** (First, Middle, Last) Jesica Marcela Ferrucho Romero | **6b. MOTHER'S FULL NAME BEFORE FIRST MARRIED** (First, Middle, Last) Jesica Marcela Ferrucho Romero |
|---|---|

| **6c. STATE OF BIRTH - NAME COUNTRY IF NOT USA** Colombia | **6d. DATE OF BIRTH** (Month, Day, Year) September 19, 1990 | **6e. RESIDENCE - CITY, VILLAGE, OR TOWNSHIP** (Check one box and specify) ☑ INSIDE CITY OR VILLAGE  ☐ TWP OF   OF Detroit | **6f. COUNTY** Wayne | **6g. STATE** Michigan |
|---|---|---|---|---|

**FATHER**

| **7a. FATHER'S CURRENT LEGAL NAME** (First, Middle, Last) Miguel Angel Burgos Lopez | **7b. STATE OF BIRTH - NAME COUNTRY IF NOT USA** Colombia | **7c. DATE OF BIRTH** (Month, Day, Year) October 28, 1989 |
|---|---|---|

**INFORMANT**

| **8a. I CERTIFY THAT THIS PERSONAL INFORMATION PROVIDED IS CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.**  SIGNATURE *Jesica Ferrucho Romero*  (PARENT OR OTHER INFORMANT) | **8b. THE PARENT(S) REQUEST THAT INFORMATION ON THIS BIRTH BE RELEASED TO THE SOCIAL SECURITY ADMINISTRATION FOR ISSUANCE OF A SOCIAL SECURITY NUMBER AND CARD.**  ☑ YES    ☐ NO |
|---|---|

**CERTIFICATION**

| **9a. I CERTIFY THAT THE ABOVE NAMED CHILD WAS BORN ALIVE AT THE PLACE AND TIME, AND ON THE DATE AS PROVIDED.**  SIGNATURE *Kelli K Muscat*    DATE 07/23/2024 | **9b. CERTIFIER'S NAME AND TITLE** (Print or Type) Kelli K Muscat Certifier |
|---|---|

**REGISTRAR**

| **10a. REGISTRAR'S SIGNATURE** *George Darany* | **10b. DATE FILED BY LOCAL REGISTRAR** (Month, Day, Year) July 26, 2024 |
|---|---|

DCH-0481H (5/12/10)

Print



State of Michigan    )
County of Wayne     )  ss.
City of Dearborn     )

  I do hereby certify that this document is a true copy of the record on file in this office.

## JAN 17 2025
### DATE

REGISTRAR

LF 9574

CF 2459



**STATE OF MICHIGAN**
DEPARTMENT OF HEALTH AND HUMAN SERVICES

121. 2024-054988
STATE FILE NUMBER

## CERTIFICATE OF LIVE BIRTH

| | | | |
|---|---|---|---|
| **CHILD** | 1. CHILD - NAME (First) Antonella | (Middle) | (Last) Burgos Ferrucho | (Suffix) |

| | | | |
|---|---|---|---|
| 2. SEX Female | 3a. PLURALITY - Single, Twin, Triplet, etc. (Specify) Triplet | 3b. IF NOT SINGLE BIRTH - First, Second, Third, etc. (specify) First | 4a. DATE OF BIRTH (Month, Day, Year) July 19, 2024 | 4b. TIME OF BIRTH 19:30 Military |

**PLACE**

| 5a. HOSPITAL NAME (If not hospital, give Street and Number) Corewell Health Dearborn Hospital | 5b. CITY, VILLAGE, OR TOWNSHIP OF BIRTH Dearborn | 5c. COUNTY OF BIRTH Wayne |
|---|---|---|

**MOTHER**

| 6a. MOTHER'S CURRENT LEGAL NAME (First, Middle, Last) Jesica Marcela Ferrucho Romero | 6b. MOTHER'S FULL NAME BEFORE FIRST MARRIED (First, Middle, Last) Jesica Marcela Ferrucho Romero |
|---|---|

| 6c. STATE OF BIRTH - NAME COUNTRY IF NOT USA Colombia | 6d. DATE OF BIRTH (Month, Day, Year) September 19, 1990 | 6e. RESIDENCE - CITY, VILLAGE, OR TOWNSHIP (Check one box and specify) ☑ INSIDE CITY OR VILLAGE OF Detroit ☐ TWP OF | 6f. COUNTY Wayne | 6g. STATE Michigan |
|---|---|---|---|---|

**FATHER**

| 7a. FATHER'S CURRENT LEGAL NAME (First, Middle, Last) Miguel Angel Burgos Lopez | 7b. STATE OF BIRTH - NAME COUNTRY IF NOT USA Colombia | 7c. DATE OF BIRTH (Month, Day, Year) October 28, 1989 |
|---|---|---|

**INFORMANT**

| 8a. I CERTIFY THAT THIS PERSONAL INFORMATION PROVIDED IS CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF. SIGNATURE *Jesica Ferrucho Romero* (PARENT OR OTHER INFORMANT) | 8b. THE PARENT(S) REQUEST THAT INFORMATION ON THIS BIRTH BE RELEASED TO THE SOCIAL SECURITY ADMINISTRATION FOR ISSUANCE OF A SOCIAL SECURITY NUMBER AND CARD. ☑ YES    ☐ NO |
|---|---|

**CERTIFICATION**

| 9a. I CERTIFY THAT THE ABOVE NAMED CHILD WAS BORN ALIVE AT THE PLACE AND TIME, AND ON THE DATE AS PROVIDED. SIGNATURE *Kelli K Muscat*    DATE 07/23/2024 | 9b. CERTIFIER'S NAME AND TITLE (Print or Type) Kelli K Muscat Certifier |
|---|---|

**REGISTRAR**

| 10a. REGISTRAR'S SIGNATURE *George Darany* | 10b. DATE FILED BY LOCAL REGISTRAR (Month, Day, Year) July 26, 2024 |
|---|---|

DCH-0481H (5/12/10)

Print



**State of Michigan** )
**County of Wayne** ) ss.
**City of Dearborn** )

I do hereby certify that this document is a true copy of the record on file in this office.

**JAN 17 2025**
DATE

REGISTRAR



IF YOUR PASSPORT EXPIRES WITHIN SIX MONTHS OF YOUR DATE OF DEPARTURE, YOU MAY BE DENIED ENTRY INTO SOME COUNTRIES.

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

## THE UNITED STATES OF AMERICA

PASSPORT
PASSEPORT · PASAPORTE

USA

Type/Type/Tipo **P**  Code/Code/Código **USA**  Passport No./No du Passeport/No. de Pasaporte **A64104868**

Surname/Nom/Apellidos
**BURGOS FERRUCHO**

Given names/Prénoms/Nombres
**ANTONELLA**

Nationality/Nationalité/Nacionalidad
**UNITED STATES OF AMERICA**

Date of birth/Date de naissance/Fecha de nacimiento
**19 JUL 2024**

Sex/Sexe/Sexo
**F**

Place of birth/Lieu de naissance/Lugar de nacimiento
**MICHIGAN, U.S.A.**

Date of issue/Date de délivrance/Fecha de expedición
**27 JUN 2025**

Date of expiration/Date d'expiration/Fecha de caducidad
**26 JUN 2030**

Authority/Autorité/Autoridad
**UNITED STATES DEPARTMENT OF STATE**

P<USABURGOS<FERRUCHO<<ANTONELLA<<<<<<<<<<<<<
A641048685USA2407197F3006265562529260<611614

Scanned with
CamScanner



IF YOUR PASSPORT EXPIRES WITHIN SIX MONTHS OF YOUR DATE OF DEPARTURE,
YOU MAY BE DENIED ENTRY INTO SOME COUNTRIES.

*Endorsements / Mentions Spéciales / Anotaciones*

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

**PASSPORT**
PASSEPORT / PASAPORTE

## THE UNITED STATES OF AMERICA

USA

| Type/Type/Tipo | Code/Code/Código | Passport No./No. du Passeport/No. de Pasaporte |
|---|---|---|
| P | USA | A64104867 |

Surname/Nom/Apellidos
**BURGOS FERRUCHO**

Given names/Prénoms/Nombres
**JACOB**

Nationality/Nationalité/Nacionalidad
**UNITED STATES OF AMERICA**

Date of birth/Date de naissance/Fecha de nacimiento
**19 JUL 2024**

Sex/Sexe/Sexo
**M**

Place of birth/Lieu de naissance/Lugar de nacimiento
**MICHIGAN, U.S.A.**

Date of issue/Date de délivrance/Fecha de expedición
**27 JUN 2025**

Date of expiration/Date d'expiration/Fecha de caducidad
**26 JUN 2030**

Authority/Autorité/Autoridad
**UNITED STATES DEPARTMENT OF STATE**

P<USABURGOS<FERRUCHO<<JACOB<<<<<<<<<<<<<<<<<<<
A641048674USA2407197M3006265562529259<975604

Scanned with
CamScanner



IF YOUR PASSPORT EXPIRES WITHIN SIX MONTHS OF YOUR DATE OF DEPARTURE,
YOU MAY BE DENIED ENTRY INTO SOME COUNTRIES.

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

**THE UNITED STATES OF AMERICA**

PASSPORT
PASSEPORT / PASAPORTE

USA

Type/Type/Tipo     Code/Code/Código     Passport No./No. du Passeport/No. de Pasaporte
P                  USA                  A64104866

Surname/Nom/Apellidos
**BURGOS FERRUCHO**

Given names/Prénoms/Nombres
**JOSHUA**

Nationality/Nationalité/Nacionalidad
UNITED STATES OF AMERICA

Date of birth/Date de naissance/Fecha de nacimiento
19 JUL 2024

Sex/Sexe/Sexo
M

Place of birth/Lieu de naissance/Lugar de nacimiento
MICHIGAN, U.S.A.

Date of issue/Date de délivrance/Fecha de expedición
27 JUN 2025

Date of expiration/Date d'expiration/Fecha de caducidad
26 JUN 2030

Authority/Autorité/Autoridad
UNITED STATES DEPARTMENT OF STATE



P<USABURGOS<FERRUCHO<<JOSHUA<<<<<<<<<<<<<<<<
A641048663USA2407197M3006265562529258<987644

Scanned with
CamScanner







# Exhibit





PEDIATRIC ASSOCIATES OF DEARBORN

December 11th, 2025

To whom it may concern,

This letter is to assist Jessica Ferrucho and her husband
Miguel Angel Burgos Lopez DOB 10/28/2089, A220751504,  to communicate  the health history
of her Triplets:
 Antonella Burgos Ferrucho,
Joshua Burgos Ferrucho
Jacob Burgos Ferrucho
 DOB 07/19/2024 .

The Burgos Ferrucho triplets were born prematurely at 28 weeks 4/7 days gestation, spending
54 days in the NICU.  The family has brought the children to our office for their primary care
pediatric needs since 2 months of age.  They are up to date on well visits and vaccinations. The
parents have done a very good job with their three children who have been growing well.

There are some developmental  findings related to  premature birth that are being monitored.
Antonella at birth had a Germinal Matrix intracerebral bleed  associated with  prematurity.  This
can lead to neurological issues like developmental delay. She has expressive language delay
that is being closely monitored. In January if not progressing in her speech and language she
will be referred to Early on of Michigan. Joshua has Retinopathy of Prematurity  being followed
now yearly by the Ophthalmologist.  Jacob  also has expressive language delay that will be
reevaluated at the 18 month well visit in January of 2026.

Mrs. Ferrucho does not have family in the area and depends on her spouse to assist in the daily
needs of raising three toddlers.  Mrs. Ferrucho communicated the strain this separation from her
spouse is causing on the family dynamic.  At our last encounter in December 2025 for a sick
visit for Antonella, her mother reported Antonella as being especially affected by the absence of
her father. Her appetite has dropped and mother has noticed behavioral changes such as
irritability. Iron was started for iron deficiency anemia.

We are happy to assist  Jessica Ferrucho and her family with any further needs.
Thank you.

Sincerely,

Leslie Mofrad, MSN, CPNP

# Exhibit





## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| ASC Appointment Notice | APPLICATION/PETITION/REQUEST NUMBER ZDF2360889170 | | | NOTICE DATE 06/22/2023 |
|---|---|---|---|---|
| CASE TYPE I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL | | ACCOUNT NUMBER | USCIS A# A220 751 504 | CODE 3 |



MIGUEL ANGEL BURGOS LOPEZ
1519 EVANS ST
DETROIT MI 48209

**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.** To process your application, petition, or request, the U.S. Citizenship & Immigration Services (USCIS) must collect your biometrics. Please appear at the below Application Support Center (ASC) at the date and time specified.

**WARNING:** Unless USCIS excuses you based on good cause, failure to appear at this biometrics appointment will result in an applicant-caused delay that will impact your eligibility for employment authorization based on your pending asylum application. If you fail to appear at this appointment as scheduled, USCIS may: (1) dismiss your asylum application, if you are in lawful immigration status or paroled; or (2) refer your application to an immigration judge, if you are not in lawful immigration status or paroled. If you fail to appear at this appointment as scheduled, and you are currently in removal proceedings, an immigration judge may deem your asylum application abandoned.

| APPLICATION SUPPORT CENTER | DATE AND TIME OF APPOINTMENT |
|---|---|
| USCIS DETROIT<br>11411 E Jefferson Avenue<br>Detroit MI 48214 | 07/14/2023<br>08:00AM |

**WHEN YOU APPEAR AT THE ASC FOR BIOMETRICS SUBMISSION, YOU MUST BRING:**

1. **THIS APPOINTMENT NOTICE,** and

2. **PHOTO IDENTIFICATION** (e.g. passport, valid driver's license, national ID, military ID, State-issued photo ID, or USCIS-issued photo ID). If you do not have photo identification, please expect a delay.

Only those necessary to assist with transportation or completion of the biometrics worksheet should accompany you to your ASC appointment. If you have open wounds, bandages, or casts when you appear for biometrics submission, USCIS may reschedule your ASC appointment if we determine your injuries may interfere with your biometrics submission. Please do not visit a USCIS office if you are sick or feel symptoms of being sick. Follow the instructions on this notice to reschedule your appointment.

You may bring cell phones or electronic devices, but they must be turned off during biometrics collection. No one may photograph or record at an ASC.

For more information regarding your ASC appointment, visit https://www.uscis.gov/forms/forms-information/preparing-your-biometric-services-appointment. If you have questions regarding this notice, please call the USCIS Contact Center at 1-800-375-5283 (TTY 800-767-1833).

**NOTE:** If an ASC closes due to inclement weather or unforeseen circumstances, USCIS will automatically reschedule your ASC appointment for the next available date and time. For the latest information on the status of an office, visit https://www.uscis.gov/about-us/uscis-office-closings. Please check this page on the day of your ASC appointment. If USCIS reschedules your ASC appointment, you will receive a new ASC appointment notice.

You must update your address within 10 days if you move. For instructions, visit https://www.uscis.gov/addresschange. If you are in removal proceedings, you must also notify the Executive Office for Immigration Review (EOIR or Immigration Court) within five working days of any change of address or telephone number by filing a completed Form EOIR-33, Alien's Change of Address/Phone Number Form/Immigration Court. For instructions, visit https://www.justice.gov/eoir/form-eoir-33-eoir-immigration-court-listing.

**WARNING:** Failure to update your mailing address with USCIS, and, if applicable, EOIR may result in dismissal of your asylum application, referral of your asylum application to an immigration judge, or if you are already in removal proceedings, an entry of a removal order in your absence if you fail to appear at a hearing before an immigration judge.

USCIS may use your biometrics to check the criminal history records of the FBI, for identity verification, to determine eligibility, to create immigration documents (e.g., Green Card, Employment Authorization Document, etc.), or for any purpose authorized by the Immigration and Nationality Act. You may obtain a copy of your own FBI record using the procedures outlined within Title 28 C.F.R. Section 16.32. For information, please visit https://www.fbi.gov/services/cjis/identity-history-summary-checks. For Privacy Act information, please visit https://www.fbi.gov/services/cjis/compact-council/privacy-act-statement.

| REQUESTS TO RESCHEDULE/SPECIAL HANDLING |
|---|

If you are unable to attend your scheduled ASC appointment, you may request that USCIS reschedule your ASC appointment by calling the USCIS Contact Center at 1-800-375-5283 (TTY 800-767-1833). **Your request to reschedule should: 1) be made before the date and time of the original appointment and 2) establish good cause for rescheduling.** If you fail to make a request before your scheduled appointment or fail to establish good cause, USCIS may not reschedule your ASC appointment.

If you have a serious ongoing medical condition and you cannot leave your home/hospital, you may request a mobile biometrics/homebound appointment by following the instructions on the back in the Notice for People with Disabilities or by visiting uscis.gov/accommodations.

APPLICATION NUMBER  I589- ZDF2360889170





For questions about this notice call 1-800-375-5283. For questions about your application, contact the Asylum Office or Immigration Court with jurisdiction over your case.

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.                    Form I-797C  10/13/21



## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number ZDF2360889170 | | Case Type I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL |
|---|---|---|
| Received Date 06/13/2023 | Priority Date | Applicant A220 751 504 BURGOS LOPEZ, MIGUEL ANGEL |
| Notice Date 06/13/2023 | Page 1 of 1 | |

| MIGUEL BURGOS LOPEZ 1519 EVANS ST DETROIT MI  48209 | **Notice Type:** Defensive Receipt Notice |
|---|---|

### *** ACKNOWLEDGEMENT OF RECEIPT ***

USCIS has received a copy of your I-589 (application for Asylum and Withholding of Removal) filed in defense of removal from the US in Immigration Court. Pursuant to S.265 of the Immigration and Nationality Act, you are required to notify USCIS, in writing, of any address changes, within 10 days of such change using Form AR11. Since you were placed in removal proceedings before an Immigration Judge, you are also required to notify the Immigration Court having jurisdiction over your case of any change of address within 5 days of such change, on Form EOIR-33. If you changed your address, please mail each completed change of address form (AR11 and EOIR-33) to the location specified on the respective form.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

Nebraska Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 82521
Lincoln NE 68501-2521

**USCIS Contact Center:** www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.    Form I-797C  10/13/21

# Exhibit



Department of Homeland Security
U.S. Citizenship and Immigration Serv    rm I-797C, Notice of Action

Department of Homeland Security
U.S. Citizenship and Immigration Serv    rm I-797C, Notice of Action

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number<br>IOE9087772171 | | Case Type<br>I918A - PETITION FOR QUALIFYING FAMILY MEMBER OF U-I<br>RECIPIENT |
|---|---|---|
| Received Date<br>04/14/2025 | Priority Date | Applicant A220 751 504<br>BURGOS LOPEZ, MIGUEL ANGEL |
| Notice Date<br>08/30/2025 | Page<br>1 of 2 | |

| BURGOS LOPEZ, MIGUEL ANGEL<br>c/o CARRERA LAW OFFICES PLLC<br>30555 SOUTHFIELD RD 520<br>SOUTHFIELD  MI  48076 | Notice Type: Receipt Notice<br>Fee Waived |
|---|---|

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. This is a courtesy copy, not the official notice.

### What the Official Notice Said

We have received the application or petition ("your case") listed above. This notice only shows that your case was filed on the "Received Date" listed above. It does NOT grant you any immigration status or immigration benefit, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available when you contact us about your case.

### Contacting the Agency

If your safe mailing address changes and you do not have an attorney of record or representative on your case you must submit your address change in writing, with your signature, to the center with jurisdiction over your filing. Otherwise, you might not receive notice of our action on this case. If any other changes need to be made you also must contact the center with jurisdiction over your filing in writing. Please include what changes need to be made and your signature.

If any of the information in your notice is incorrect or you have questions about your case, you can reach USCIS at www.uscis.gov/contact, utilizing the available case inquiry options for "Inquiries for VAWA, T, and U Filings."

National Benefits Center
U.S. Citizenship & Immigration Services
P.O. BOX 25920
Overland Park, KS 66225

Processing time - Processing times vary by case type. Go to www.uscis.gov to see the current processing times listed by case type and office.

- View your case status on our website's Case Status Online page.
- You can also sign up to receive free email updates as we process your case.
- During most of the time while your case is pending, the processing status will not change. This is because we are working on cases that were filed before your case.
- When we make a decision on your case or if we need something from you, we will notify you by mail and update our systems.
- If you do not receive an initial decision or update from us within our current processing time, visit our website at www.uscis.gov for options for submitting an inquiry.

Biometrics - We require biometrics (fingerprints, a photo, and a signature) for some types of cases. If we need biometrics from you we will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must wait for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are:

- A passport or national photo ID issued by your country,
- A driver's license,
- A military photo ID, or
- A state-issued photo ID card.

If you receive more than one ASC appointment notice (even for different cases), take them both to the first appointment date.

| Please see the additional information on the back. You will be notified separately about any other cases you filed. |
|---|
| USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online. |

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. BOX 25920
Overland Park KS 66225

USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information    Form I-797C  10/11/01



## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| | |
|---|---|
| **Receipt Number** IOE8180270467 | **Case Type** I918 - PETITION FOR U NONIMMIGRANT STATUS |
| **Received Date** 04/14/2025 | **Priority Date** | **Applicant** A220 938 465 FERRUCHO ROMERO, JESICA MARCELA |
| **Notice Date** 08/30/2025 | **Page** 1 of 2 | **Beneficiary** FERRUCHO ROMERO, JESICA MARCELA |

FERRUCHO ROMERO, JESICA MARCELA
16616 WASHBURN ST
DETROIT  MI  48221

**Notice Type:** Receipt Notice
Fee Waived

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

**We have received the application or petition ("your case") listed above. This notice only shows that your case was filed on the "Received Date" listed above.** It does NOT grant you any immigration status or immigration benefit, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available when you contact us about your case.

**Contacting the Agency**

If your safe mailing address changes and you do not have an attorney of record or representative on your case you must submit your address change in writing, with your signature, to the center with jurisdiction over your filing. Otherwise, you might not receive notice of your action on this case. If any other changes need to be made you also must contact the center with jurisdiction over your filing in writing. Please include what changes need to be made and your signature.

If any of the information in your notice is incorrect or you have questions about your case, you can reach USCIS at www.uscis.gov/contact, utilizing the available case inquiry options for "Inquiries for VAWA, T, and U Filings."

National Benefits Center
U.S. Citizenship & Immigration Services
P.O. BOX 25920
Overland Park, KS  66225

**Processing time** - Processing times vary by case type. Go to www.uscis.gov to see the current processing times listed by case type and office.

- View your case status on our website's Case Status Online page.
- You can also sign up to receive free email updates as we process your case.
- During most of the time while your case is pending, the processing status will not change. This is because we are working on cases that were filed before yours.
- When we make a decision on your case or if we need something from you, we will notify you by mail and update our systems.
- If you do not receive an initial decision or update from us within our current processing time, visit our website at www.uscis.gov for options for submitting an inquiry.

**Biometrics** - We require biometrics (fingerprints, a photo, and a signature) for some types of cases. If we need biometrics from you, we will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must wait for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are:

- A passport or national photo ID issued by your country,
- A driver's license,
- A military photo ID, or
- A state-issued photo ID card.

If you receive more than one ASC appointment notice (even for different cases), take them both to the first appointment date.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. BOX 25920
Overland Park KS 66225



USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.     Form I-797C  10/13/21



## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number<br>IOE8590441432 | | Case Type<br>I192 - APPLICATION FOR ADVANCE PERMISSION TO ENTER AS NONIMMIGRANT |
|---|---|---|
| Received Date<br>04/14/2025 | Priority Date | Applicant  A220 751 504<br>BURGOS LOPEZ, MIGUEL ANGEL |
| Notice Date<br>08/30/2025 | Page<br>1 of 1 | |

BURGOS LOPEZ, MIGUEL ANGEL
16616 WASHBURN ST
DETROIT MI  48221

**Notice Type:** Receipt Notice
Fee Waived

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

<u>What the Official Notice Said</u>

We have received the application or petition ("your case") listed above. **This notice only shows that your case was filed on the "Received Date" listed above.** It does NOT grant you any immigration status or immigration benefit, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available when you contact us about your case.

**If any of the above information is incorrect or you have any questions about the status of your case, please call the USCIS Contact Center (UCC) at 1-800-375-5283 (TDD number is 1-800-767-1833) or visit the USCIS website at www.uscis.gov.** If you call us, please have your Alien Registration Number (A-Number) and/or the receipt number shown above. The receipt number is a tracking number for your case and will help with inquiries.

**Processing time** - Processing times vary by case type. Go to www.uscis.gov to see the current processing times listed by case type and office.

* View your case status on our website's Case Status Online page.
* You can also sign up to receive free email updates as we process your case.
* Most of the time your case is pending, the process status will not change. This is because we are working on cases that were filed before your case.
* When we make a decision on your case or if we need something from you, we will notify you by mail and update our systems.
* If you do not receive an initial decision or update from us within our current processing time, contact the UCC at 1-800-375-5283 or visit our website at www.uscis.gov.

**If your address changes** - Aliens must report a change of address within ten (10) days of moving within the United States or its territories. To file a change of address visit the USCIS website at www.uscis.gov/addresschange or call UCC at 1-800-375-5283 (TDD number is 1-800-767-1833).

**Return of Original Documents** - Use Form G-884, Request for the Return of Original Documents, to request the return of original documents submitted to establish eligibility for an immigration or citizenship benefit. You only need to submit one Form G-884 if you are requesting multiple documents contained in a single USCIS file. However, if the requested documentation is in more than one USCIS file, you must submit a separate request for each file. (For example: If you wish to obtain your mother's birth certificate and your mother's/father's marriage certificate, both of which are in the USCIS file that pertains to her, submit one Form G-884 with your mother's information.)

**NOTICE:** The information you provide on and in support of applications and petitions is submitted under the penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. BOX 25920
Overland Park KS 66225



USCIS Contact Center: www.uscis.gov/contactcenter

---

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.          Form I-797C  10/13/21

# INCIDENT/INVESTIGATION REPORT

| | |
|---|---|
| **Agency Name** *Detroit Police Department* | **Case#** *231117-0358* |
| **ORI** *MI 8234900* | **Date / Time Reported** *11/17/2023 22:37  Fri* |

**Location of Incident** *1519 EVANS ST, Detroit MI 48209*

| Gang Relat | Premise Type | Zone/SCA |
|---|---|---|
| NO | *Parking Lot/garage* | 408 |

**Last Known Secure** *11/17/2023 22:37  Fri*
**At Found** *11/17/2023 22:37  Fri*

## INCIDENT DATA

**#1 Crime Incident(s)** *Aggravated / Felonious Assault* (Com) — 13002
- Weapon / Tools *Handgun* — Activity N
- Entry *Rear Door*  Exit *Rear Door*  Security

**#2 Crime Incident** *Burglary - Forced Entry* (Com) — 22001
- Weapon / Tools *Handgun* — Activity N
- Entry *Rear Door*  Exit *Rear Door*  Security

**#3 Crime Incident** *Obstructing Police* (Com) — 48000
- Weapon / Tools *None* — Activity N
- Entry  Exit  Security

**MO**

## VICTIM

# of Victims 3   Type: INDIVIDUAL/ NOT LAW   Injury: None/none Apparent   Domestic: NO

| V1 Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|
| *FIRRURCHO, JESSICA* | *1,2* | *09/19/1990* Age *33* | *W* | *F* | *199* | *Resident* | |

Home Address *1519 EVANS ST - 2, Detroit, MI 48209-*
Email
Home Phone *313-936-6166*
Employer Name/Address
Business Phone   Mobile Phone

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

## OTHERS INVOLVED

CODES:  V- Victim (Denote V2, V3)   WI = Witness   IO = Involved Other   RP = Reporting Person (if other than victim)

Type: INDIVIDUAL/ NOT LAW ENFORCEMENT   Injury: None/none Apparent

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|
| V2 | *GUTIERREZ, ARTURO* | *1,* | *05/28/1985* Age *38* | *W* | *M* | *198* | *Resident* | |

Home Address *1519 EVANS ST  DETROIT, MI 48209*
Email
Home Phone *586-366-0413*
Employer Name/Address
Business Phone   Mobile Phone

Type: SOCIETY/PUBLIC   Injury: None/none Apparent

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|
| V3 | *State of Michigan* | *3* | / / Age | | | | | |

Home Address
Email
Home Phone
Employer Name/Address
Business Phone   Mobile Phone

## PROPERTY

1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| 59 | *EVID* | | $0.10 | | 6 | *38 ROUNDS* | 38 | |
| 13 | *EVID* | | $200.00 | | 1 | *FIREARMS* | | *S850749* |
| 75 | *EVID* | | $50.00 | | 1 | *CELL PHONE* | | |

## STATUS

Officer/ID# *Alamara, Hider M  (WES, 4TH)*
Invest ID# *Villarreal, Nigel L  (WES, 4PDU)*
Supervisor *Watkins, John D  (WES, 4TH)*

Complainant Signature

| Case Status | | Case Disposition: | |
|---|---|---|---|
| *Cleared By Arrest* | *11/20/2023* | | Page 1 |

R_CS1IBR   Printed By:   Sys#: 976111   03/14/2024 15:50

# Incident Report Additional Name List

| Detroit Police Department | | OCA: *231117-0358* |
|---|---|---|

## Additional Name List

| | Name Code/# | | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex |
|---|---|---|---|---|---|---|---|---|
| 1) | *IO* | *1* | *BURGOS, MIGUEL* | | *10/28/1989* | *34* | *W* | *M* |
| | Address | | *1519 EVANS ST , DETROIT, MI 48209-* | | H: *347-616-8168* | | | |
| | Empl/Addr | | | | B: - - | | | |
| | | | | | Mobile #: - - | | | |

# INCIDENT/INVESTIGATION REPORT

*Detroit Police Department*

Case # *231117-0358*

| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged / Vandalized | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |
|---|---|---|---|---|---|---|---|---|

| | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| D R U G S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Assisting Officers**

Suspect Hate / Bias Motivated:   *NONE*

## NARRATIVE

POLICE RUN FOR BURGLARY

By: HAWKINSL868,  03/14/2024 15:50

## REPORTING OFFICER NARRATIVE

| Detroit Police Department | | OCA 231117-0358 |
|---|---|---|
| Victim FIRRURCHO, JESSICA | Offense AGGRAVATED / FELONIOUS ASSAULT | Date / Time Reported Fri 11/17/2023 22:37 |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

[11/18/2023 00:26, ALAMARAH302, 34247]

PO, H. ALAMARA, BADGE 1888, BWC 066180
PO, M.CHASTEEN, BADGE 933, BWC 118009
SCOUT 4-2, VEHICLE 205034, PLATOON 3

VIDEO/ AUDIO APPEAR TO BE OPERATIONAL
FULLY MARKED, FULLY UNIFORMED

FORCE USED
ARREST MADE

MY PARTNER AND I MADE THE LOCATION OF 1519 EVANS ST FOR REPORTS OF A BURGLARY.  472 SGT KNAPP MADE SCENE JUST PRIOR TO MY ARRIVAL.  WHEN I ENTERED THE GARAGE I OBSERVED MR. GUTIERREZ HOLDING A MR. YEPES-MARTINEZ DOWN ON THE GROUND OF GARAGE BEHIND RESIDENCE, I TOOK CONTROL OF HIS RIGHT ARM BY GRABBING HIS RIGHT WRIST AND FORCED IT BEHIND HIS BACK WITH MY RIGHT HAND AND INSTRUCTED MR. YEPES-MARTINEZ TO PUT HIS HANDS BEHIND HIS BACK, HE DID NOT COMPLY.

MY PARTNER WAS ON HIS LEFT SIDE YELLED THAT MR. YEPES MARTINEZ WAS HOLDING A GUN IN HIS LEFT HAND UNDER HIS TORSO WHICH WAS NOT VISIBLE TO ME  AT WHICH POINT MY PARTNER DISARMED MR. YEPES- MARTINEZ, AND RECOVERED THE FIREARM. I THEN DISENGAGED AND PO SPEAK THEN TOOK CONTOL OF HIS RIGHT ARM.

MR. YEPES- MARTINEZ WAS PLACED IN CUFFS BY OFFICER JAMIL AND ESCORTED TO SCOUT CAR BY OFFICER JAMIL AND SGT KNAPP

SGT AMARANTE MADE LOCATION AS NON INVOLVED SUPERVISOR TO CONDUCT INTERVIEWS FOR USE OF FORCE.

MS. FIRRURCHO (NON ENGLISH SPEAKING)STATED TO SGT KNAPP WHO LATER RELAYED TO ME, THAT SHE WAS EXITING THROUGH THE REAR OF HER HOUSE WHEN SHE SAW MR. YEPES-MARTINEZ STANDING IN BACKYARD NEAR SOUTH FENCE, SHE STATED HE POINTED HANDGUN AT HER, AND SHE THEN FLED INTO HOUSE SCREAMING.

MR. BURGOS AND MR. GUTIERREZ WERE IN THE ALLEY WHEN THEY HEARD SCREAMING AND ENTERED THE BACKYARD OF 1519 EVANS.  THEY STATED THEY SAW MR. YEPES-MARTINEZ STANDING IN ENTRYWAY OF GARAGE.  THEY SUBDUED MR. YEPES-MARTINEZ AND PINNED HIM TO GROUND UNTIL POLICE ARRIVED.

SCOUT 410 CONVEYED TO DDC.

SMITH AND WESSON, REVOLVER, CONTAINING SIX ROUNDS OF .38 SPECIAL. SERIAL # S850759., METAL DISC PUT ON EVIDENCE AT 11TH PRECINCT



**FOURTH PRECINCT**

4700 W. FORT ST. - DETROIT, MI 48209

FRONT DESK:  313.596.5400

DETECTIVE SECTION:  313.596.5440 ·

REPORT # 2311170358    DATE 11/19/23

**TELEPHONE CRIME REPORTING & AUTO RECOVERY:**

313.267.4600

**REPORT MAY BE PICKED UP WITHIN 2 DAYS FROM:**

**RECORDS SECTION (3ʳᵈ PCT)**

2875 W. GRAND BLVD. @ J.C. LODGE HWY.

MONDAY – FRIDAY, 8 AM – 3:45 PM

313.596.1909

ALL REPORTS: INCIDENT OR ACCIDENT - $10.00

## Incident Report Suspect List

*Detroit Police Department*

OCA: *231117-0358*

| 1 | Name (Last, First, Middle) | Also Known As | Home Address |
|---|---|---|---|
| | *YEPES-MARTINEZ, JUAN* | *YEPES, JUAN; MARTINEZ, JUAN* | *1736 INFANTRY ST DETROIT, MI 48209* |

Business Address

| DOB | Age | Race | Sex | Eth | Hgt | Wgt | Hair | Eye | Skin | Driver's License / State |
|---|---|---|---|---|---|---|---|---|---|---|
| *06/26/1964* | *59* | *W* | *M* | *U* | *508* | *160* | *GRY* | *BRO* | *LGT* | |

Scars, Marks, Tattoos, or other distinguishing features

| *Reported Suspect Detail* | Suspect Age | Race | Sex | Eth | Height | Weight | SSN |
|---|---|---|---|---|---|---|---|

| Weapon, Type | Feature | Make | Model | Color | Caliber | Dir of Travel |
|---|---|---|---|---|---|---|
| | | | | | | Mode of Travel |

| Veh Yr / Make / Model | Drs | Style | Color | Lic Plate / State | VIN |
|---|---|---|---|---|---|

Notes

Physical Char

## Incident Report Related Property List

*Detroit Police Department*

OCA: *231117-0358*

---

**1**

| Property Description | | | Make | | Model | | Caliber |
|---|---|---|---|---|---|---|---|
| *38 ROUNDS* | | | | | | | *38* |

| Color | | Serial No. | | Value | | Qty | | Unit | | Jurisdiction |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | *$0.10* | | *6.000* | | | | *Locally* |

| Status | | Date | | NIC # | | State # | | Local # | | OAN |
|---|---|---|---|---|---|---|---|---|---|---|
| *Evidence* | | *11/17/2023* | | | | | | *708150-1* | | |

| Name (Last, First, Middle) | | DOB | Age | Race | Sex |
|---|---|---|---|---|---|
| *Yepes-martinez, Juan* | | *06/26/1964* | *59* | *W* | *M* |

Notes

*Found in Mr. Yepes-Martinez front right upper pocket*

*Placed on evidence at the fourth precinct*

---

**2**

| Property Description | | | Make | | Model | | Caliber |
|---|---|---|---|---|---|---|---|
| *FIREARMS* | | | | | | | |

| Color | | Serial No. | | Value | | Qty | | Unit | | Jurisdiction |
|---|---|---|---|---|---|---|---|---|---|---|
| | | *S850749* | | *$200.00* | | *1.000* | | | | *Locally* |

| Status | | Date | | NIC # | | State # | | Local # | | OAN |
|---|---|---|---|---|---|---|---|---|---|---|
| *Evidence* | | *11/17/2023* | | | | | | *708150-3* | | |

| Name (Last, First, Middle) | | DOB | Age | Race | Sex |
|---|---|---|---|---|---|
| * No name * | | | | | |

Notes

*SMITH & WESSON / 6 SHOT REVOLVER / METAL DISC*

---

**3**

| Property Description | | | Make | | Model | | Caliber |
|---|---|---|---|---|---|---|---|
| *CELL PHONE* | | | | | | | |

| Color | | Serial No. | | Value | | Qty | | Unit | | Jurisdiction |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | *$50.00* | | *1.000* | | | | *Locally* |

| Status | | Date | | NIC # | | State # | | Local # | | OAN |
|---|---|---|---|---|---|---|---|---|---|---|
| *Evidence* | | *11/17/2023* | | | | | | *708150-5* | | |

| Name (Last, First, Middle) | | DOB | Age | Race | Sex |
|---|---|---|---|---|---|
| * No name * | | | | | |

Notes

---

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

**MIGUEL ANGEL BURGOS LOPEZ**
Petitioner,

v.

**WARDEN (OR SUPERINTENDENT), NORTH LAKE PROCESSING CENTER, et al.**
Respondents.

Case No. _____

### [PROPOSED] ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Upon consideration of the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241, the record, and the applicable law, the Court finds that relief is warranted.

Accordingly, **IT IS ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus is **GRANTED**.

2. U.S. Immigration and Customs Enforcement shall **immediately release Petitioner Miguel Angel Burgos Lopez (A# 220-751-504)** from custody, subject to such reasonable conditions of supervision as the Government may lawfully impose;

**OR, IN THE ALTERNATIVE,**

3. Respondents shall provide Petitioner with a **prompt, constitutionally compliant individualized bond hearing** before an Immigration Judge **within seven (7) days** of the entry of this Order, at which the **Government bears the burden of proving by clear and convincing evidence** that Petitioner's continued detention is justified based on danger to the community or risk of flight.

4. Nothing in this Order shall be construed as adjudicating the merits of any removal proceedings, asylum claim, or immigration benefit application.

IT IS SO ORDERED.

Dated: _____

_____
UNITED STATES DISTRICT JUDGE